DLM

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OMNIPOINT HOLDINGS, INC.,

Plaintiff,

v.

THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CURTIS PONDER, FRANK CORSO III, and DONALD CURRAN in their capacities as members of the City of Cranston Zoning Board of Review

Defendants.

Civil Action No.

CA 06 531 ML

**COMPLAINT**

This action arises out of the unlawful denial by the City of Cranston Zoning Board of Review ("Zoning Board") of an application, submitted pursuant to the City of Cranston Zoning Ordinance ("Zoning Ordinance") by Omnipoint Holdings, Inc. ("Omnipoint") for a dimensional variance and a special use permit to construct, install, operate and maintain a wireless telecommunications service facility on property located at 1753 Phenix Ave., Cranston, RI ("the Property"). This denial violates the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c). As a result, Omnipoint seeks an injunction from this Court directing the Zoning Board to grant Omnipoint's application for a special use permit and a dimensional variance with respect to the proposed wireless telecommunications service facility.

## PARTIES

1. Plaintiff, Omnipoint, is a Delaware corporation with a principal place of business at 15 Commerce Way, Norton, Massachusetts. Omnipoint is a leader in commercial wireless Personal Communication Services ("PCS") throughout the United States. Omnipoint successfully bid upon and received a PCS wireless broadcast license from the Federal Communications Commission ("FCC") for a region that encompasses the City of Cranston.

2. Defendant, the City of Cranston, (the "City"), is a duly authorized municipality constituted and existing under the laws of the State of Rhode Island.

3. Defendant, the Zoning Board, is a duly authorized unit of the City that has been delegated the authority, among other things, to grant variances and special use permits under the Zoning Ordinance ("the Ordinance"). A true and accurate copy of the Ordinance is appended hereto as Exhibit A.

4. Defendants, Joy Montanaro, Edward DiMicco, Curtis Ponder, Frank Corso III and Donald Curran are each residents of the City and together served as the Zoning Board that denied the application for the variances and special use permit at issue in this action.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically § 704 of the Federal Telecommunications Act of 1996.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b), since the defendants each reside in this District, and the events and/or omissions giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### The Personal Communications Service Technology

7. Omnipoint is a communications venture committed to providing integrated wireless personal communications services by building a national wireless network using PCS technology. PCS technology is a new generation of wireless service that uses digital transmission to improve the services available to consumers.

8. Unlike cellular services using analog-based systems, PCS digital technology converts voice or data signals into a stream of digits to allow a single radio channel to carry multiple simultaneous signal transmissions. This allows Omnipoint to offer services often unavailable in analog-based systems, such as secured transmissions and enhanced voice signals, high-speed data, paging and imaging capabilities as well as voice mail, call forwarding and call waiting.

9. Mobile telephones using PCS technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic devices housed in a small equipment cabinet, or base station. The base station is connected by microwave, fiber optic cable, or ordinary telephone wire to the Base Station Controller, subsequently routing the calls throughout the world.

10. Because the PCS system has a lower signal and a much higher frequency than traditional cellular technology, the range between the PCS mobile telephone and the antennas is limited.

11. In order to provide continuous service to a PCS telephone user, coverage must overlap in a grid pattern resembling a honeycomb. In the event that Omnipoint is unable to

construct a cell site within a specific geographic area, Omnipoint will not be able to provide service consistent with its obligations under its FCC license to the consumers within that area.

12. Omnipoint's engineers use complex computer programs and extensive field testing to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cells and other factors. In order for the entire system to be operational, there must be properly placed cell sites installed and functioning so that seamless coverage can be realized, and only when the entire system is operational will a PCS telephone user have service and an uninterrupted conversation throughout a given territory. If there is no functioning cell site within a given area, there would be no PCS telephone service for customers within that area, and mobile customers who travel into the area will experience blocked calls, in which callers experience an abrupt and complete loss of signal.

13. Based upon Omnipoint's research and analysis and as part of an extensive review of call traffic in the targeted area of Cranston, Omnipoint determined that, in order to avoid a substantial gap in its services to its customers, including blocked calls, it needed to install a wireless communications facility consisting of a ninety foot (90') monopole antenna support structure, three panel antennas within the monopole structure at a height of eight seven feet center line of its antennas, and, in addition, cables and base equipment to be located within a fifteen foot by fifteen foot fenced compound at the base of the proposed monopole.

**Federal Statutory Control Over PCS Siting**

14. Section 704 of the Federal Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332(c), governs federal, state and local government regulation of the siting of PCS facilities such as the one at issue here.

15. The Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Act may seek expedited review in the federal courts. 47 U.S.C. § 332(c)(7)(B)(v).

**The Request for Use and Dimensional Variances**

16. On or about September 21, 2005, Omnipoint, as a co-applicant with the owner of the property, Solid Rock Church, applied for a dimensional use variance of forty eight feet from the Ordinance's setback requirements, which require the proposed monopole to be located within setback of 1 ½ times the height of the pole of an abutting residential zoning district.

17. Omnipoint's proposed monopole meets the required setbacks on all sides of the Property but its southern property line.

18. Omnipoint met all of the criteria specified by the Zoning Ordinance and Rhode Island law for obtaining the variance requested.

19. Omnipoint also applied for a special use permit, as required by the Ordinance's Zoning Use Table.

20. Omnipoint's application met all criteria specified by the Zoning Ordinance and Rhode Island law for obtaining the special permit it requested.

21. Prior to public hearing on its requested relief, Omnipoint attended a public hearing on November 9, 2005, before the City of Cranston Planning Commission, which, under the terms of Section 30-29 of the Ordinance, may provide a non-binding opinion to the Board with respect to special use permit applications.

22. In a written decision dated November 9, 2005, the Planning Commission recommended that the Board deny the zoning relief sought by Omnipoint, on the grounds that

"the applicant has not demonstrated that existing nearby facilities cannot accommodate the service need."

23. In the months following this recommendation, Omnipoint provided the Planning Commission with undisputed evidence that it could not provide the service required by its FCC license from "existing nearby facilities" and, moreover, that no alternative location existed as a potential site for its proposed facility.

24. The Zoning Board held two public meetings on Omnipoint's application for the variance and special use permit it sought. The first was held on April 12, 2006 and the second was held on September 13, 2006.

25. At the public hearings, Omnipoint representatives submitted evidence regarding Omnipoint's proposed antenna installation, its decision to use a flagpole style monopole to minimize complaints about the aesthetic aspects of the site, its existing and proposed coverage resulting from the installation and its efforts to find alternative sites in the area.

26. At the public hearing, several abutters opposed the application. The majority of the abutters expressed their concerns about the health effects of radio frequency emissions, and several addressed their concerns about the aesthetic appearance of the flagpole style monopole. Several abutters expressed the desire that Omnipoint locate its facility on a nearby golf course, notwithstanding that Omnipoint provided evidence that the golf course owners would not lease any portion of their property for monopole construction.

27. Omnipoint presented evidence at the hearings that its proposed facility would be compatible with the surroundings, that it would not be injurious or offensive to the neighborhood, that it would not hinder the future development of the City, that it would promote the general welfare of the City, and that it would be in conformance with the purpose and intent of the

Cranston comprehensive plan, all of which evidence was consistent with the requirements for the grant of a special use permit under the Ordinance.

28. Omnipoint also presented evidence at the hearings consistent with the requirements for the grant of a dimensional use variance under the Ordinance and Rhode Island law. Specifically, it demonstrated a) that it needed a dimensional variance because of the unique characteristics of the subject land and its proposed structure, and not because of the general characteristics of the surrounding area or because of its own physical or economic disability; b) that.its request for a relief was not the result of any prior action or because its effort to realize greater financial gain; and c) that granting the dimensional variance would not alter the general characteristic or impair the intent or purpose of the City's Comprehensive plan. Additionally, Omnipoint presented evidence that no other sites could provide the telecommunications service mandated by Omnipoint's FCC telecommunications license.

29. The Zoning Board closed its public hearing on September 13, 2006 and did not vote on Omnipoint's application at the close of the hearing.

30. On November 7, 2006, Zoning Board filed a decision with the City Clerk's Office, indicating that the Board voted, 5-0, on September 13, 2006, to deny both Omnipoint's application for a dimensional variance and its application for a special use permit. A true and accurate copy of the Zoning Board's decision is appended hereto as Exhibit B.

31. The Notice of decision does not identify a single, specific ground or justification for its denials. Rather, it simply reads, "DENIED".

**<u>COUNT I - Violation of the Telecommunications Act of 1996</u>**

32. Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

33. Article VI, Clause 2, of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution and the Laws of the United States which shall be made in Pursuance thereof... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

34. The Act governs the regulation of the placement, construction, and modification of personal wireless service facilities and, under the Supremacy Clause, preempts state laws and municipal ordinances or by-laws affecting such facilities to the extent that such laws, ordinances, and by-laws conflict with the Act.

35. Omnipoint's application, seeking a special use permit and a dimensional variance, constitutes a request to provide "personal wireless services" within the meaning of the Act, and, as such, is entitled to the protection of the Act.

36. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii): "Any decision by a State of local government or instrumentality thereof to deny a request to place, construct or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

37. Omnipoint's application for a special use permit and a dimensional variance fulfilled all criteria required by the Zoning Ordinance in order to receive such zoning relief.

38. It is the defendants' burden to produce substantial evidence supporting its denial of Omnipoint's application. The Zoning Board's decision violates the Act in that it is not "supported by substantial evidence contained in a written record." 47 U.S.C. § 332 (c)(7)(B)(iii).

39. Accordingly, the Zoning Board's decision, which failed to identify any evidence nor identify a single justification for denying the zoning relief for which Omnipoint applied,

violated the Act's prohibition on state or local governments denying the placement, construction and modification of personal wireless service facilities without substantial evidence and a written record. 47 U.S.C. § 332(c)(7)(B)(iii).

40. Accordingly, the Zoning Board's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis.

41. Further, the Court should exercise its power to issue an order commanding the Zoning Board to grant the special use permit and dimensional variance for which Omnipoint applied.

42. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iv): "[n]o State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

43. Omnipoint's proposed site complies with all state and FCC regulations concerning radio frequency emissions.

44. To the extent that the Zoning Board relied on concerns expressed by abutters at its public hearing concerning the health effects of radio frequency emissions, the Zoning Board's decision violated the Act's prohibition on state or local governments regulating the placement, construction and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions. 47 U.S.C. § 332(c)(7)(B)(iv). Further, it violated the federal prohibition on state or local governments regulating federal radio frequency interference. 47 U.S.C. § 151 et seq.

45. Pursuant to 47 U.S.C. § 332(c)(7)(B), the "regulation of the placement, construction and modification of personal wireless service facilities by any State or local government or instrumentality thereof …(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services".

46. Omnipoint has established that a) its application represents the only feasible plan to provide coverage to a significant geographic area within Cranston, b) denial of its request for a special use permit and a dimensional variance would result in a significant gap in its provision of wireless communication services to its customers, and c) that there are no alternative sites within the affected area on or from which it may otherwise fill its coverage gap.

47. Consequently, the Zoning Board's denial of Omnipoint's application for use and dimensional variances violated the Act's requirement that state or local governments not prohibit or effectively prohibit the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(II).

48. Accordingly, the Zoning Board's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis. Further, the Court should exercise its power to issue an order commanding the Zoning Board to grant the variances for which Omnipoint applied.

**WHEREFORE,** Omnipoint respectfully requests the following relief as against the defendants:

1. An expedited review of the matters set forth in this Complaint;

2. An injunction mandating that the Zoning Board grant approval of Omnipoint's request for use and dimensional variances;

3. An injunction and order of mandamus directing the Town, through its officers and agents, to issue a building permit for construction of the tower, antennas, cabinets

and enclosure identified in the joint application by Omnipoint and Cingular;

4. A judgment that the defendants' actions violated the Federal Telecommunications Act and are therefore void and invalid;

5. An award of Omnipoint's costs of suit herein, including reasonable attorneys' fees; and

6. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

OMNIPOINT HOLDINGS, INC.

By its attorneys,

Paul S Cantor

Paul Cantor, Esq.
RI Attorney #3177
321 South Main Street, #302
Providence, RI 02903
Telephone: (401) 351-8200
Fax Number: (401) 351-9032

William A. Worth, Esq.
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200.
Boston, MA 02114
Telephone: (617) 456-8000
Fax Number: (617) 456-8100

Date: December 6, 2007