UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| OMNIPOINT HOLDINGS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CURTIS PONDER, FRANK CORSO III, and DONALD CURRAN in their capacities as members of the City of Cranston Zoning Board of Review,<br><br>Defendants. | ) | C.A. No. 06-531-ML-DLM |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

This suit is brought by Omnipoint Holdings, Inc. ("Omnipoint"), a Delaware Corporation which sought a dimensional variance and special use permit before the City of Cranston Zoning Board of Review.[1]

The matter concerns Omnipoint's request to place a 90 foot tall monopole containing PCS antennas in an area less than the setback required by the applicable Cranston zoning ordinance. The request was the subject of numerous hearings, where evidence and testimony were taken. The hearings were held before both the Cranston Planning Commission and the Cranston Zoning Board of Review.

On November 7, 2006, the Zoning Board issued its Decision denying the requested

[1] As noted below, the *facts* alleged in the Complaint are, for purposes of a Motion to Dismiss, accepted as true.

dimensional variance and special use permit.[2] This suit was commenced on or about December 7, 2006, some 30 days after the Zoning Board of Review issued its decision.

Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(1), alleging lack of subject matter jurisdiction and, in the alternative, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be granted. In sum, Defendants respectfully submit that the failure to utilize the appellate provisions of the Rhode Island statute governing land use precludes the claims set forth in the Complaint in this matter.

## II. SUMMARY OF ARGUMENT

Defendants submit that the decision of the Cranston Zoning Board of Review which Omnipoint bases this suit upon is not a "final action" upon which a Telecommunications Act Sec. 332 lawsuit can be based.

This argument is based primarily on the decision of the Seventh Circuit United States Court of Appeals in *Sprint Spectrum v. City of Carmel*, 361 F.3d 998 (7th Cir. 2004). That case held that the exhaustion requirements set forth in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) and its progeny apply to the issue of whether a Sec. 332 action is ripe. Applying *Williamson* to the Telecommunications Act demonstrates that administrative processes must be exhausted at the state and local level prior to the filing of a Sec. 332 suit.

In determining whether such exhaustion has occurred, it must be determined whether an additional, unused remedy is part of the administrative process which must be exhausted or an

---

[2] The Complaint alleges that the Decision was not supported by evidence or justified by any finding of fact. *E.g.*, Complaint, Par. 39. In fact, the Decision was accompanied by Findings of Fact contained in some 33 numbered paragraphs. Inasmuch as those Findings do not form the basis of the instant Motion, and Defendants do not rely on matters outside the pleading, those Findings of Fact will not be referred to herein. However, the undersigned has, prior to the filing of this Motion, provided opposing counsel with a copy of the Findings of Fact.

'independent' remedy. Defendants respectfully submit that under Rhode Island's statutory framework for consideration and appeal of zoning matters, resort to the appellate procedures before the Superior Court is a necessary prerequisite to suit under Sec. 332. Because those procedures provide for 'appellate' review, deference to the factfinding of the Zoning Board of Review, no jury and a defined, limited, standard of legal review, Defendants respectfully submit that the 'action' which Omnipoint takes issue with in this matter is not a "final action" from which a Sec. 332 action can be pursued. Alternatively, Defendants submit that the Complaint, failing to allege facts which establish that this suit is brought after the exhaustion of administrative remedies, fails to state a claim upon which relief may be granted.

Because Omnipoint did not pursue the statutory appeal to the Superior Court, it was not aggrieved by a final action and Defendants submit that this Court, respectfully, lacks jurisdiction over the claim.

## III. ARGUMENT

### A. <u>The Applicable Rules.</u>

The United States District Court is a Court of limited jurisdiction. In this case, Omnipoint has asserted 'federal question' jurisdiction, claiming that its right to sue in this Court is established by 47 U.S.C. Sec. 332(c)(7)(B)(v). That provision permits suit within 30 days of a "final action" by a State or local government or instrumentality. If, in fact, there has been no "final action," then there is no subject matter jurisdiction pursuant to the statute.

In the alternative, Defendants respectfully submit that the Complaint, on its face, fails to allege a "final action," thus making the Complaint vulnerable to a Rule 12(b)(6) Motion to Dismiss. In considering a Motion to Dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Fed. R. Civ. Proc., the Court assumes that all Plaintiffs' factual allegations are true and construes them in the light most favorable to the Plaintiff. *Aulson v.*

*Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). "...[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

B. The Rhode Island Statutory Scheme.

Rhode Island has enacted a comprehensive statutory process for the establishment of, powers and procedures to be utilized by Zoning Boards of Review in the various cities and towns within the state. R.I.G.L. 45-24-56, *et seq.* Among the subject matters which are encompassed within this statutory scheme are requests for variances. R.I.G.L. 45-24-58.

The statute provides that the Zoning Board of Review shall render a decision and R.I.G.L. 45-24-69 provides that that decision may be appealed to the Superior Court within twenty days of the decision. Such an appeal before the Superior Court is decidedly *not* a *de novo* hearing: the original record is certified and transmitted to the Court (R.I.G.L. 45-24-69(a)); new evidence is not permitted prior to the date of the hearing absent a Motion and good cause shown (R.I.G.L. 45-24-69(b)); in the event that such cause is shown, the new evidence is presented to the *Zoning Board of Review*, not the Court (*Id.*); the review before the Superior Court is without a jury (R.I.G.L. 45-24-69(c)); new evidence at the hearing is not a matter of right (*Id.*); the Court is not permitted to substitute its judgment for that of the Zoning Board of Review as to the weight of the evidence on questions of law or fact (R.I.G.L. 45-24-69(d)); and the bases for reversal, denial or remand are limited to strict legal grounds.[3] Such an appeal is granted priority status

[3] Such grounds, as set forth in R.I.G.L. 45-24-69(d) include that the Zoning Board of Review's decision is: (1) In violation of constitutional, statutory, or ordinance provisions; (2) In excess of the authority granted to the zoning board of review by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

upon the request of any party. R.I.G.L. 45-24-70.[4]

In sum, the statutory scheme which establishes the Zoning Board of Review includes a comprehensive review process which includes an expedited Superior Court appellate review as part of a complete process for the orderly administration of zoning law.

C. There Was No "Final Action" Prior To This Suit Being Filed.

The Telecommunications Act provides that:

> Any person adversely affected by any *final action* or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [Subparagraph (7)(B)] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.

47 U.S.C. Sec. 332(c)(7)(B)(v)(emphasis added).[5]

The issue of what constitutes a "final action" for purposes of making a Section 332 suit viable has not been litigated much, but the Seventh Circuit Court of Appeals recently, in *Sprint Spectrum, L.P. v. City of Carmel*, 361 F.3d 998 (7th Cir. 2004), issued a thorough opinion which, Defendants respectfully submit, is persuasive and establishes that this suit is premature and not ripe inasmuch as it is not based upon a "final action."

In *Sprint Spectrum*, Sprint sought to add its own antenna to the existing ham radio tower of a resident of Carmel, Indiana.[6] The initial application was made to the Carmel Department of Community Services, which issued a permit. That grant was appealed by a neighbor to the Carmel Board of Zoning Appeals, who claimed that the use required a variance. The Building

---

[4] "Upon the entry of any case or proceeding brought under the provisions of this chapter, including pending appeals and appeals subsequently taken to the court, the court shall, at the request of either party, advance the case, so that the matter is afforded precedence on the calendar and shall be heard and determined with as little delay as possible."

[5] The Complaint in this matter, at Par. 15, fails to note the requirement, which Defendant believes is significant, that the "action" from which review is sought must be "final."

[6] The facts of *Sprint Spectrum* appear at 361 F.3d 998.

Inspector, thereafter, ordered work on the project stopped because of his conclusion that the installation of an access road required additional zoning changes. Eventually, the Carmel Board of Zoning Appeals heard both Sprint's appeal on the subdivision issue and the neighbor's appeal on the issuance of the permit. After multiple hearings, the Carmel Board of Zoning Appeals upheld the neighbor's appeal and dismissed Sprint's subdivision appeal.

Thereafter, Sprint filed suit in the United States District Court alleging violations of Sec. 332(c)(7)(B). In response, the City filed a Motion to Dismiss based upon Sprint's failure to seek a special use permit – the City argued that that failure rendered the City's decision not "final." As a result, the City argued, there was no jurisdictional basis for a federal suit.

The Seventh Circuit considered, in detail, the history and purpose of the Telecommunications Act, the tension between its provisions and the traditional power of local government to control zoning matters, the relative burdens imposed upon parties to a Sec. 332 action, legislative history and United States Supreme Court caselaw on analogous issues. Ultimately, the Court concluded that the dispute was not ripe for federal court action and affirmed the District Court's dismissal of the suit. 361 F.3d at 1001 (District Court dismissal), 1005 (affirmed).

1. <u>The Relationship Between State and Local Government Authority and the Telecommunications Act.</u>

The *Sprint Spectrum* Court noted that the issue before it was whether the decisions made by the City of Carmel were "final actions" based upon which a Sec. 332 suit could be commenced.

The Court first noted that, in interpreting the term "final action," Congress' intent must be viewed in light of existing caselaw:

> . . . Congress does not write statutes in a vacuum. For one thing, it is guided by prior judicial decisions, and so it is well-recognized that "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."

> *Midlantic Nat'l Bank v. N.J. Dep't of E.P.*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (*internal citation omitted*). *See also Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 813, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("When Congress codifies a judicially defined concept, it is presumed, absent an express statement to the contrary, that Congress intended to adopt the interpretation placed on that concept by the courts.").

361 F.3d at 1001-1002.

In light of that conclusion, the Seventh Circuit surveyed the existing caselaw concerning ripeness of challenges to state and local land use decisions, since ripeness is a necessary element to the existence of a case or controversy – a bedrock requirement of federal jurisdiction. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993).[7]

The Seventh Circuit concluded that the framework enunciated by the Supreme Court in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) applied to the analysis of whether a claim under Sec. 332 of the Telecommunications Act is ripe. The Court analyzed the requirements of *Williamson County* as follows:

> . . . zoning authorities must be given an opportunity to "arrive[] at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question" before its owner has a ripe challenge. *Williamson County*, 473 U.S. at 191, 105 S.Ct. 3108. The Court has further delineated what constitutes such a final decision. In *Williamson County* it held that the plaintiff's taking and due process claims were not ripe because it did not seek a variance. *Id*. at 193-94, 105 S.Ct. 3108. In *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351-52, 106 S.Ct. 2561, 91 L.Ed.2d 285, the plaintiff's taking claim was premature because, even though a planning commission rejected the plaintiff's development plan, the plaintiff failed to submit less intensive plans. With these two cases, the Supreme Court "erected imposing barriers ... to guard against the federal

---

[7] "Ripeness is, essentially, a question of timing. See *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The doctrine's basic rationale 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)." *Sprint Spectrum*, 361 F.3d at 1002.

> courts becoming the Grand Mufti of local zoning boards." *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir.1989).

*Sprint Spectrum*, 361 F.3d at 1002.[8]

Having reviewed the background of the legislation and the precedent of *Williamson* and its progeny, the Seventh Circuit Court concluded that the *Williamson* analysis applied to the Telecommunications Act:

> As we have just discussed, there is a specific ripeness doctrine for challenges to land use decisions, and we see no significant difference simply because Sprint's claim arises from a statute rather than the Constitution. Therefore, in analyzing the Act we focus on those cases rather than more general ripeness standards, *see, e.g.*, *Abbott Labs.*, 387 U.S. at 148, 87 S.Ct. 1507, or requirements arising from other statutes, *see, e.g., Bavido v. Apfel*, 215 F.3d 743, 748 (7th Cir.2000) (discussing exhaustion requirement in Privacy Act, 5 U.S.C. § 552(a)(g)(i), relied on by Sprint).

*Sprint Spectrum*, 361 F.3d at 1003. In so concluding, the Seventh Circuit rejected Sprint's argument that such an analysis presented an obstacle inconsistent with Congress' evident intent to provide an expedient vehicle for appeals of state and local actions, or inaction: "We disagree. Examining both the language of the Act as well as its legislative history, we do not believe that Congress intended to modify the traditional standard for determining whether a land use dispute is ripe for federal adjudication." *Sprint Spectrum*, 361 F.3d at 1003.

In further support of its conclusion, the *Sprint Spectrum* Court looked at the legislative history of the Telecommunications Act:

> To begin, although creating a federal cause of action, Congress explicitly ensured that the Act would not intrude upon the traditional authority of local governments over land use matters. *H.R. Conf. Rep. No. 104-458*, at 207-08 (1996), *reprinted*

---

[8] The *Sprint Spectrum* Court noted that there is a recognized exception to this doctrine for "bona fide equal protection claims," but described those as allegations that "involve a fundamental right or suspect class, or the plaintiff must demonstrate 'governmental action wholly impossible to relate to legitimate governmental objectives.' *Sprint Spectrum, 361 F.3d* at 1002, *quoting Forseth v. Village of Sussex*, 199 F.3d 363, 371 (7th Cir.2000). Respectfully, Defendants submit that this case does not fall within the exception (as the *Sprint Spectrum* Court likewise concluded with respect to that case).

> *in* 1996 U.S.C.C.A.N. 124, 222. As codified, § 332(c)(7) is entitled "Preservation of local zoning authority." 47 U.S.C. § 332(c)(7). That section expressly states that "[e]xcept as provided in this paragraph, nothing in [the] Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." *Id*. at § 332(c)(7)(A).[9]

2. <u>"Final Action" Under The Telecommunications Act</u>

An important distinction was drawn by the Seventh Circuit between the general *Williamson* analysis and analysis under the Telecommunications Act.

> . . . [U]nder *Williamson County* a property owner must exhaust all available state remedies for compensation prior to bringing a taking claim to federal court. *Williamson County*, 473 U.S. at 193-94, 105 S.Ct. 3108. Congress, however, explicitly modified this requirement. As Congress noted, the term "final action" means "final administrative action at the State or local government level so that a party can commence action under the [Act] rather than waiting for the exhaustion of any independent State court remedy otherwise required". *H.R. Conf. Rep. No. 104-458*, at 9 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 223.

*Sprint Spectrum*, 361 F.3d at 1004. The distinction noted is that, under *Williamson*, a marginally broader exhaustion is required than that required under the Telecommunications act – specifically, while *Williamson* requires complete exhaustion, the *Sprint Spectrum* Court concluded that Congress relieved that broad exhaustion requirement only to the extent that, in order to have a ripe Telecommunications Act claim, a disappointed party need not pursue an "independent" State court remedy.

In *Sprint Spectrum*, the Court cites the case of *AT & T Wireless PCS, Inc. v. Town of*

---

[9] The *Sprint Spectrum* Court's analysis of legislative history went even deeper: "Indeed, the history behind this provision is significant. As drafted in the House of Representatives, the Act would have allowed the FCC total federal preemption of state authority to regulate tower siting. *H.R. Conf. Rep. No. 104-458*, at 207 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 221-22. The Conference Committee, however, rejected this approach, seeking to leave zoning authority in the hands of state and local governments. As the Conference Committee explained: 'The conference agreement creates a new [§ 332(c)(7)] which prevents [FCC] preemption of local and State land use decisions and preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement.' *Id*." *Sprint Spectrum*, 361 F.3d at1003.

*Porter*, 203 F.Supp. 985, in considering the issue of what is a “final action.” *Sprint Spectrum*, 361 F.3d at 1001n.2 and 1004. Notably, the Court cited *AT & T* for the proposition that “the Telecommunications Act does not require the exhaustion of all state judicial remedies before bringing suit in federal court.” 361 F.3d at 1001n.2 (the footnote actually appears at page 1005). Accordingly, it is important to note the critical distinction set forth in *AT & T* in determining what additional, unused remedy, renders a decision ‘non-final,’ and what, additional, unused remedy is considered ‘independent,’ such that a decision by a state or local agency is ‘final,’ and hence makes a Sec. 332 claim ripe.

*AT & T* considered, among other things,[10] a Motion to Dismiss a claim under the Telecommunications Act based upon the failure to exhaust remedies. In that case, *AT & T* brought a Sec. 332 action after the Porter Board of Zoning Appeals denied a zoning variance. The *AT & T* Court noted that the only redress from the decision was by way of writ of *certiorari*. The Court characterized that route as follows: “rather than being a further administrative step, [it] is analogous to a civil complaint.” *AT & T*, 203 F.Supp.2d at 989. Having in mind this context, it appears that the *Sprint Spectrum* Court’s citation to *AT & T* accepted that Court’s analysis of what was, on the one hand, part of the complete administrative process and what was, on the other hand, an ‘independent’ civil action.

Ultimately, the Seventh Circuit concluded that Sprint Spectrum’s Section 332 claim was not ripe and affirmed the dismissal of the suit. In that case, the Court concluded:

> . . . until Sprint is told definitely whether or not it is permitted to install an antenna and equipment shelter, it is mere speculation whether it even has an injury to complain of. See 13A *C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d* § 3532 (In gauging the fitness of the issues in a case for judicial resolution, courts are centrally concerned with "whether the case involves uncertain or contingent future events that may not occur as anticipated, or

[10] The cited decision covers two separate bases for a Motion to Dismiss and Cross-Motions for Summary Judgment. *AT & T*, 203 F.Supp.2d at 997.

indeed may not occur at all.").

*Sprint Spectrum*, 361 F.3d at 1004.

3. "Final Action" Under the Rhode Island Statute.

As noted, the Rhode Island statute provides a comprehensive statutory framework for the resolution of zoning disputes. Part and parcel of that process is an expedited, appellate procedure in the Superior Court. The procedure is explicitly appellate in nature, not a separate action which could be termed, under any analysis, "independent." The review is based upon the pre-existing record evidence (absent overriding considerations), the matter is decided without a jury, the standard of review is appellate in nature and defers substantially to the Zoning Board of Appeals and the matters are given calendar priority upon the request of any party. The Superior Court has the power to reverse, modify and remand, fulfilling the traditional role of an appellate body.

Respectfully, Defendants submit that, under the analysis set forth by the Seventh Circuit in *Sprint Spectrum*, which Defendants respectfully suggest is persuasive, the decision of the Cranston Zoning Board of Review is not a "final decision" for purposes of the Telecommunications Act. Defendants further submit that Omnipoint's failure to utilize the procedure for Superior Court review of the action of the Cranston Zoning Board of Review decision establishes a fatal (to this suit) failure to exhaust under *Williamson*.

## IV. CONCLUSION

Based upon the foregoing argument, Defendants respectfully submit that this Court lacks jurisdiction over the claim set forth in the Complaint in the matter or, alternatively, that the Complaint fails to state a claim upon which relief may be granted insofar as it does not allege facts which establish that it is based upon a "final decision" which can support a Sec. 332 action.

For these reasons, Defendants respectfully pray that the Complaint in this matter be dismissed.

Defendants,
By and through their counsel,

Dated: February 16, 2007

/s/Jeffrey S. Michaelson

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-5220

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document to be mailed, first class mail, postage prepaid, to the following persons this 16 day of February, 2007:

Paul S. Cantor, Esq.
Law Office of Paul Cantor
321 South Main Street
Providence, R.I. 02903

/s/ Jeffrey S. Michaelson