UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| OMNIPOINT HOLDINGS, INC.,<br><br>Plaintiff,<br>v.<br><br>THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CURTIS PONDER, FRANK CORSO III, and DONALD CURRAN in their capacities as members of the City of Cranston Zoning Board of Review<br><br>Defendants. | ) | Civil Action No. 06-531ML |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF, OMNIPOINT HOLDINGS, INC.**

**INTRODUCTION**

This action arises out of the unlawful denial by the City of Cranston Zoning Board of Review ("Zoning Board") of an application, submitted pursuant to the City of Cranston Zoning Ordinance (“Zoning Ordinance”) by Omnipoint Holdings, Inc. ("Omnipoint") for a dimensional variance and a special use permit to construct, install, operate and maintain a wireless telecommunications service facility on property located at 1753 Phenix Avenue, Cranston, Rhode Island (“the Property”). The Zoning Board’s denial effectively prohibits Omnipoint from remedying a significant gap in its wireless coverage in Cranston, at a proposed site which constitutes the only feasible alternative for providing service to the area affected by the gap. Accordingly, the Zoning Board’s denial

of Omnipoint's request for zoning relief violates the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7)(B)(i).

## FACTS

### A. Omnipoint's PCS Technology

Omnipoint is licensed by the Federal Communications Commission ("FCC") to provide Personal Communications Services ("PCS") in the State of Rhode Island, including the City of Cranston. Omnipoint's Statement of Undisputed Facts (hereinafter, "Stmt."), 1. PCS digital technology converts voice or data signals into a stream of digits to allow a single radio channel to carry multiple simultaneous signal transmissions. This technology allows Omnipoint to offer services unavailable in analog-based systems, such as secured transmissions and enhanced voice, high-speed data, paging and imaging capabilities, as well as voice mail, call forwarding and call waiting. Stmt., 2.

Mobile devices using PCS technology transmit a radio signal to antennas mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic devices housed in a small equipment cabinet, or base station. The base station is connected by microwave, fiber optic cable, or ordinary telephone wire to the Base Station Controller, subsequently routing the calls throughout the world. Stmt., 3-5.

### B. Omnipoint's Network Needs

The operation of Omnipoint's PCS depends upon a network of wireless communications facilities. Because PCS uses a lower signal and a much higher frequency than traditional cellular technology, the range between the PCS mobile telephone and the antennas is limited. Given Omnipoint's FCC-designated frequency, its

usual and optimum range for radio frequency propagation is one and a half miles, with yields lessened by building density, terrain and tree cover. Stmt., 6-8.

To provide effective, reliable and uninterrupted service to PCS users in their cars, home and office, without interruption or lack of access, coverage must overlap in a grid pattern resembling a honeycomb. In the event that Omnipoint is unable to construct a wireless communications facility within a specific geographic area, so that each site's coverage overlaps with an adjacent facility, Omnipoint will not be able to provide service consistent with its obligations under its FCC license to the consumers within that area. Those consumers will experience an abrupt and complete loss of signal. Stmt., 9-11.

To determine where telecommunications facilities need to be located for the provision of reliable coverage in any area, Omnipoint's radio frequency engineers use industry-standard computer modeling software programs. In its simplest form, the software programs employed by Omnipoint generate propagation maps, which identify by color coding existing coverage and coverage gaps in a given area. Anyone reviewing Omnipoint's propagation maps can plainly see where coverage gaps exist as those gap areas are indicated in white on Exhibit 2. Stmt., 12.

**C. There is a Coverage Gap in Cranston**

Omnipoint determined, based upon its review of its wireless coverage in the southwest section of Cranston, that it had a coverage gap in that section of the city. Specifically, its radio frequency propagation maps indicated that it lacked coverage in the area bordered by Hope Road, Phenix Avenue and Burlingame Road. These roadways provide a direct path of travel from Cranston to West Warwick and Coventry. The gap

extends to adjacent roads in the surrounding neighborhoods and affects users attempting to access Omnipoint's PCS network within the affected area. Stmt., 13-16.

**D. Omnipoint Searches for a Site to Remedy its Coverage Gap**

Omnipoint confirmed the gap disclosed on its computer-generated propagation maps with field tests and then sought to determine where to locate a wireless facility in order to remedy its coverage gap. Its field testing included drive testing, which entails measuring radio signals in the vicinity of a possible site for a facility. In addition, Omnipoint observed local topography and nearby structures to assess potential sites for a wireless communications facility. Consistent with its standard practice, it also reviewed the location and design of its existing facilities in the area to assess the potential interaction of possible sites within Omnipoint's PCS network. Stmt., 17-19.

Omnipoint performed its field tests and analyses in the subject coverage gap area. Based on the results, it determined that it needed to locate a wireless facility in the vicinity of 1753 Phenix Avenue (the "Property") to remedy the gap along the direct travel routes between Cranston and West Warwick and Coventry. While Omnipoint had wireless facilities nearby, none of them provided coverage in the vicinity of the Property. Stmt., 20-21.

Taking into account the limitation of its radio frequency propagation imposed by Omnipoint's FCC-designated frequency, Omnipoint site acquisition specialists searched for and identified other potential sites within one and a half miles of the Property. Omnipoint ruled out one potential site, the Cranston Fire Department Museum, after determining that additional facilities at that site would be redundant to existing coverage without remedying the coverage gap. Stmt., 22-23.

Another potential site was ruled out because it was unavailable. Specifically, Omnipoint engaged in a series of protracted negotiations with the owners of the Cranston Country Club ("Club" or "Country Club") about locating wireless facilities at the Club to remedy its coverage gap. First, it sought rights to access the Club's property so that it could install antennas on an existing utility pole. Fearing damage to the golf course fairways, one of the Club's owners rejected that proposal. Omnipoint then proposed leasing land from the Club and installing a monopole on the Club's property. The Club's owners disagreed about how to allocate lease payments. In an attempt to resolve this dispute, Omnipoint offered $25,000 to whichever owner would accede to the other's position. After several months, the monopole proposal also failed as none of the owners would accede. Stmt., 24-30.

Omnipoint determined that other than the Country Club, the only other potential site that offered sufficient land on which to build a monopole structure was the Property. Stmt., 31.

As a result of Omnipoint's drive testing data and analysis of radio frequency propagation maps, as well as a review of existing and potential alternative sites, it concluded that the only feasible alternative to rectify Omnipoint's network coverage gap in the vicinity of the Property would be to construct a ninety foot (90') monopole at the Property and to install three panel antennas at a height of eighty-seven (87) feet center line of its antennas (the "Proposed Monopole"). No other existing facility or location (other than the Country Club, which was unavailable) would remedy Omnipoint's coverage gap. Stmt., 32-33.

**E. Omnipoint Applies for Zoning Relief**

The Proposed Monopole meets Cranston's zoning setback requirements on all sides of the Property but its southern property line. Therefore, on or about September 21, 2005, Omnipoint, as co-applicant with the owner of the Property, applied to the Zoning Board of Review for the City of Cranston ("Zoning Board") for a dimensional use variance from the City of Cranston's setback requirements. Omnipoint also applied for a special use permit. Stmt., 34-36.

Prior to public hearing on its requested relief, Omnipoint attended a public hearing before the City of Cranston Planning Commission, which, under the terms of Section 30-29 of Cranston's zoning ordinance, may provide a non-binding opinion to the Board with respect to special use permit applications. In its written decision, the Planning Commission recommended that the Zoning Board deny the zoning relief requested by Omnipoint, on the grounds that "the applicant has not demonstrated that existing nearby facilities cannot accommodate the service need." Stmt., 37-38.

In the months following this recommendation, Omnipoint provided to the Planning Commission undisputed evidence that it could not provide the service required by its FCC license from "existing nearby facilities" and, moreover, that no alternative location existed as a potential site for its proposed property. Specifically, it presented evidence that additional facilities at the Cranston Fire Department Musuem would result in redundant coverage without remedying the coverage gap. It also presented evidence regarding its efforts to locate antennas on an existing utility pole or a monopole at the Country Club. Stmt., 39-40.

Thereafter, the Zoning Board held two public meetings on Omnipoint's applications for the variance and special use permit. At the public hearings, Omnipoint submitted evidence regarding Omnipoint's proposed antenna installation, its decision to use a flagpole style monopole to minimize complaints about the aesthetic aspects of the site, its existing and proposed coverage from the installation and its efforts to find alternative sites in the area. The Zoning Board denied Omnipoint's applications for a dimensional variance and special use permit. Stmt., 41-43.

**F. The Zoning Board Attempts to Justify its Denials**

The Zoning Board has offered an affidavit of a radio frequency engineer, David Maxson, in support of its defense in the instant case. In his affidavit, Mr. Maxson states that if Omnipoint reduced the height of its proposed monopole from ninety feet (90') to seventy-five feet (75'), it would comply with Cranston's Zoning Ordinance. While this may be true, a shorter tower at the Property might meet certain of Cranston's zoning height requirements, it would not provide coverage adequate to remedy the coverage gap near the Property. Stmt., 44-45.

Further Mr. Maxson correctly states that the proposed monopole would not satisfy Omnipoint's "self-imposed criteria for 'reliable service'" as its signal will not reach adjacent aras in Cranston. This fact is undisputed. Indeed, given the limited range of radio frequency propagation, there is no single facility capable of remedying every existing coverage gap in Cranston. Not even the multiple sites that exist in Cranston provide complete, seamless coverage. Stmt., 46-48.

Mr. Maxson suggests, without any substantiation, that if Omnipoint "seeks to grow 'seamless' in-building service in Cranston, then it is most productive to develop a

more densely laid out network of smaller, lower-height facilities." Even assuming this is true, a more dense design of wireless facilities would create additional zoning issues as, to reach its customers, more facilities would be required, many of them in residential areas. Stmt., 49-50.

## I. OMNIPOINT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE ZONING BOARD'S DENIALS OF OMNIPOINT'S ZONING APPLICATIONS EFFECTIVELY PROHIBIT OMNIPOINT'S PROVISION OF WIRELESS SERVICES.

"Under the [Federal Telecommunications Act, the "TCA"], local governments retain control over decisions regarding the placement … of personal wireless facilities … subject to several substantive and procedural limitations [which provide] 'an outer limit' upon their ability to regulate personal wireless services". Southwestern Bell Mobile Systems v. Todd, 244 F. 3d 51, 57 (1st Cir. 2001) (citations omitted). Among other things, the TCA provides that local governments making zoning decisions that involve the placement of personal wireless telecommunications facilities shall not prohibit or have the effect of prohibiting personal wireless services." 47 U.S.C. §§ 332(c)(7)(B)(i). By denying Omnipoint's applications for zoning relief, the Zoning Board effectively prohibited Omnipoint's wireless services in violation of the TCA. Accordingly, Omnipoint's Motion for Summary Judgment must be granted.

To succeed on a claim for effective prohibition under the TCA, a wireless provider must establish that: a) the town's zoning policies and decisions have resulted in a "significant gap" in wireless services within the town; and b) "further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." AT&T Wireless PCS, LLC v. Town of Charlestown, et al., 2005 U.S. Dist. LEXIS 12694 at * 43-44 (D.R.I. Mar. 2, 2005)(citations omitted).

Review of a zoning board's decision under the anti-prohibition standard is de novo. District Courts need not accord any deference to the local board's decision. The Court can find an effective prohibition "even if substantial evidence exists to support the denial of an individual permit under the terms of the town's ordinances." National Tower, LLC, et al. v. Plainville Zoning Board of Appeals, et al., 297 F. 3d 14, 20-22 (1st Cir. 2002).[1]

A. The Zoning Board's Denials Perpetuate the Significant Gap in Coverage.

A significant and substantial gap exists in the portion of Cranston bordered by Hope Road, Phenix Avenue and Burlingame Road that will be covered by the Proposed Monopole. The gap is plainly apparent on Omnipoint's computer-generated radio frequency propagation models.[2] Indeed, the white area of Exhibit 2 depicts gaps in coverage in Cranston (and its neighboring towns, which are not relevant to this matter). Even though several other wireless facilities exist in the vicinity of the Property,[3] none remedy the existing coverage gap.

---

[1] Omnipoint, in its Complaint, claimed that the defendants failed to base their decision to deny Omnipoint's application for zoning relief on substantial evidence, as required by the TCA. Omnipoint based this claim on the decision that the defendant Board of Review mailed to Omnipoint, which consisted of a single word denial, without further justification or substance. During the course of this case, the Board provided Omnipoint with a comprehensive rationale for its denial, which was not originally provided to Omnipoint but was kept on file at the Board of Review. Omnipoint does not concur with the Board's rationale for its denial of Omnipoint's application for zoning relief but has decided not to pursue the portion of its claim based upon the Board's alleged failure to support its decision with substantial evidence.

[2] Mr. Maxson's skepticism regarding the veracity of the computer-modeling used by Omnipoint (Exhibit 11, para. 32) is unfounded. The software is a standard program that is widely-used in the wireless communications industry.

[3] The other wireless facilities are identified by alphanumeric code on Exhibit 2 (e.g., 4PR0636A, 4FR4022A).

The gap is significant as it affects not only those customers who live and work in the area, but also those traveling from Cranston to West Warwick and Coventry. It borders three of Cranston's direct travel routes to neighboring towns. Without the Proposed Monopole, customers trying to get from Cranston to its neighboring towns will experience an abrupt and complete loss of signal. By denying Omnipoint's applications for zoning relief, the Zoning Board has perpetuated Omnipoint's coverage gap and prohibited its provision of wireless services to a significant part of Cranston in violation of the TCA.

B. Omnipoint's Proposed Monopole is the Only Feasible Plan.

The Zoning Board has effectively prohibited wireless services as the Proposed Monopole is the only feasible plan to remedy Omnipoint's coverage gap. Second Generation Properties, L.P. v. Town of Pelham, 313 F.3d 620, 630 (1st Cir. 2002). To establish that a permit denial is impermissible because there are no alternative sites, an applicant "must develop a record demonstrating that it has made a full effort to evaluate the other available alternatives and that the alternatives are not feasible to serve its customers." Southwestern Bell Mobile Systems, Inc. v. Todd, 244 F. 3d 51, 63 (1st Cir. 2001).

Omnipoint's efforts to evaluate alternatives and the reasons those efforts failed are well established. It considered its existing facilities, but determined, as stated above, that none of them remedied the existing gap. Since these facilities cannot serve the affected area, they were not feasible alternatives.

Next, Omnipoint identified and investigated other potential sites where it did not have existing facilities namely, the Museum, Country Club and the Property. The

Museum and Country Club were not feasible. The Museum would provide redundant coverage and would not remedy the gap. The Country Club owners would not allow Omnipoint access to the property to install antennas on an existing utility pole. Omnipoint, therefore, alternatively proposed to the owners that it lease a portion of the Club's land and install a monopole on it. After protracted negotiations, which included a $25,000 financial incentive, the owners remained at odds amongst themselves with regard to leasing issues. The Property remained the only feasible alternative. It was available (indeed, the owner was Omnipoint's co-applicant before the Zoning Board) and Omnipoint's analyses revealed that a ninety foot (90') tower on the Property would remedy the gap. Indeed, the area that will be served by the Proposed Monopole is readily visible in purple (the colored area bordering Phenix Avenue) on Exhibit 4. With the Propoped Monopole, customers in that area could maintain a reliable connection where they previously could not. Despite the fact that it was the only feasible plan, the Zoning Board denied Omnipoint's zoning requests in violation of the TCA.

The Zoning Board's engineer, David Maxson, offers a series of suggestions, one more impractical than the last, as purported alternatives to the Proposed Monopole. He fails to offer a single, concrete alternative supported by evidence that it is a viable solution to Omnipoint's coverage gap in Cranston. Rather, he raises remote and theoretical possibilities with the hopes of creating an issue of fact where none exists.

For example, he suggests that to comply with the height Ordinance, Omnipoint could build a seventy-five foot (75') monopole instead of a ninety foot (90') monopole. While this could possibly cure certain zoning issues, there is no evidence that it will

remedy Omnipoint's coverage gap.[4] Mr. Maxson does not even feign to have an understanding as to whether a shorter monopole would remedy the gap. Indeed, he admits, "further work would be required to evaluate this prospect." He has not tested his theory. This suggestion, cloaked as an alternative to the Proposed Monopole, is nothing more than a bald assertion. There is absolutely no evidence that it is <u>feasible</u>.

Mr. Maxson also suggests that Omnipoint create a "more densely laid network of smaller, lower height facilities, typcially employing existing buildings and structures" or "rearrange" its wireless facilities in Cranston. While both suggestions may be theoretically possible (the Zoning Board has not produced any proof that these theories will work), both are wildly impractical. Mr. Maxson's suggestions fail to take into account that there already exists a comprehensive and complex network of wireless sites in Cranston into which Omnipoint is attempting to locate a single facility that will not only cover a known gap, but will interact with the existing facilities. He has also not tested either theory. To even suggest that Omnipoint rearrange an entire wireless network, without providing a shred of evidence that such a rearrangement would work, defies any logic.

Mr. Maxson fails to make a single practical suggestion that is supported by evidence that it will cure Omnipoint's coverage gap. Any suggestion that Omnipoint had these suggested alternative options should, therefore, be disregarded.

---

[4] Indeed, Omnipoint reached its conclusion that it needed to install a ninety foot (90') monopole (rather than a shorter facility) only after careful consideration and extensive review and analysis of propagation maps, radio frequency data, traffic and drive testing data, and observations of terrain, tree cover and topography in the vicinity of the Property.

Locating the Proposed Monopole is the only solution to provide coverage consistent with Omnipoint's FCC license obligations to the commuters traveling in the area of Cranston bordered by Hope Road, Phenix Avenue and Burlingame Road. Because a significant gap exists and no feasible alternative exists, the Zoning Board's denials of Omnipoint's requests for zoning relief effectively prohibit Omnipoint from providing wireless services to its customers and potential customers who travel on and near the affected area in the vicinity of the Property. The Zoning Board's effective prohibition violates the TCA. Accordingly, as a matter of law, Omnipoint is entitled to summary judgment.

II. OMNIPOINT IS ENTITLED TO INJUNCTIVE RELIEF.

The proper remedy for a zoning decision that violates the TCA is an order instructing the Board(s) to authorize construction. National Tower LLC v. Plainville Zoning Board of Appeals, 297 F. 3d 14, 21-22 (1st Cir. 2002). "Congress did not intend multiple rounds of litigation" and "a board will not ordinarily receive a second chance." Id. Consequently, in addition to awarding summary judgment on behalf of Omnipoint against the the City of Cranston, the Zoning Board of Review for the City of Cranston and its individual members, this Court should also grant the injunctive relief sought by Omnipoint in this matter.

WHEREFORE, for the foregoing reasons, Omnipoint respectfully requests that this Court allow its Motion for Summary Judgment and grant the injunctive relief requested by Omnipoint.

Respectfully submitted,

OMNIPOINT HOLDINGS, INC.

By its attorneys,

/s/ Paul Cantor
Paul Cantor, Esq.
RI Attorney #3177
321 South Main Street, #302
Providence, RI 02903
Telephone: (401) 351-8200
Fax Number: (401) 351-9032

/s/ William A. Worth
William A. Worth, Esq.
Kristin M. Knuuttila, Esq.
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200.
Boston, MA 02114
Telephone: (617) 456-8000
Fax Number: (617) 456-8100

Date: November 29, 2007

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 29, 2007.

/s/ William A. Worth