UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| OMNIPOINT HOLDINGS, INC.,<br><br>Plaintiff,<br>v.<br><br>THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CURTIS PONDER, FRANK CORSO III, and DONALD CURRAN in their capacities as members of the City of Cranston Zoning Board of Review<br><br>Defendants. | Civil Action No. 06-531ML |

**AFFIDAVIT OF SHAYANA CORDOVA**

Now comes Shayana Cordova, and being duly sworn, does hereby depose and say as follows:

1. I submit this Affidavit, based upon personal knowledge, in support of the Motion for Summary Judgment filed by Omnipoint Holdings, Inc. ("Omnipoint") in the above-captioned matter.

2. I am employed by Omnipoint's subsidiary, Omnipoint Communications, Inc. ("Omnipoint") as a Team Leader for Rhode Island, Southeast Massachusetts and Cape Cod by Omnipoint. As a Team Leader, I supervise the site acquisition process for prospective Omnipoint wireless communications facilities in those geographic areas.

3. As Team Leader, I coordinate several components of the site acquisition process, including Omnipoint's radio frequency needs, the constraints imposed by local

zoning ordinances, the ability of Omnipoint to lease a prospective site and the ability of Omnipoint to engineer and construct a prospective facility on a given site.

4. Ordinarily, Omnipoint's radio frequency engineers identify an area where there is a gap in coverage and identify a "search ring" within which Omnipoint would like to locate a facility to remedy the gap in coverage. Omnipoint search rings take into account that at Omnipoint's FCC-designated frequency, its usual and optimum range for radio frequency propagation is one and a half miles, with yields lessened by building density, terrain and tree cover.

5. Once a search is identified, site acquisition specialists under my supervision travel within the search ring, seeking potential sites, whether they be existing cell towers on which Omnipoint might co-locate its antennas, existing buildings or other structures or raw land on which Omnipoint might construct a facility.

6. In 2004, Omnipoint's radio frequency engineers identified a search ring in the general vicinity of Phenix Ave., Cranston, RI, as an area where Omnipoint has a gap in its wireless service coverage.

7. I supervised site acquisition specialist Michael Walsh in his search for potential sites within this search ring.

8. Mr. Walsh provided me with updates concerning his efforts to find a potential site from which this gap in coverage could be remedied.

9. I became aware that Mr. Walsh had identified a potential site at the Cranston Fire Department Museum but that Omnipoint's radio frequency engineers had determined that this site would not remedy the coverage gap.

10. Mr. Walsh also identified a potential site at the Cranston Country Club, where there were NStar power line poles of sufficient height so that Omnipoint might be able to remedy its coverage gap by placing panel antennas on them. Access to the power line poles required permission from the Country Club, because access to the poles would require Omnipoint to Country Club property.

11. One of the owners of the Cranston Country Club, Michael Lombardi, rejected Omnipoint's offer to place its antennas on the power line pole, because of his concern that Omnipoint would have to damage golf course fairways in the placement of its facility.

12. Mr. Walsh also identified the Solid Rock Baptist Church at 1753 Phenix Ave. as a potential site for leasing raw land and the construction of a monopole.

13. In the summer of 2006, I spoke with Mr. Lombardi concerning placing a monopole on the Country Club property at lease terms of $2,000/monthly.

14. In September, 2006, Mr. Lombardi spoke with me concerning placement of the monopole on Country Club property and told me that he and his two sisters were co-owners of the Country Club and could not agree how to allocate lease payments. Specifically, Mr. Lombardi told me that he wanted the lease payments to be used to improve the golf course and his sisters wanted payment to be allocated equally among the three siblings, an allocation to which he would not agree.

15. After he disclosed this problem to me, I spoke with Mr. Lombardi and his sister, Diane Lombardi, on the telephone. Diane told me that she was authorized to speak on behalf of her sister. I offered $25,000 to either Mr. Lombardi or to his two sisters if either would accede to the other's position. Diane Lombardi and Michael Lombardi

could not agree as to how the lease payments should be allocated, with Mr. Lombardi arguing in favor of applying the payments for the benefit of the golf club, and Ms. Lombardi arguing that the funds should be split among the three siblings. Neither would agree to accept payment to accede to the other's position.

16. Because of Lombardi siblings could not reach an agreement, I determined that Omnipoint had to move forward with the Solid Rock Baptist Church site, and I so informed the Lombardis of this decision.

17. I reviewed the potential sites within the search ring with Omnipoint's engineering and construction personnel and determined that only the Country Club property and the Solid Rock Baptist Church site offered sufficient land on which to build a monopole structure.

18. I reviewed the potential structures within or near the search ring with Omnipoint's radio frequency personnel and determined that there is no existing structure within the search ring of sufficient height to place antennas at a height sufficient to work within Omnipoint's PCS network.

19. The proposed site at the Solid Rock Baptist Church at 1753 Phenix Ave., Cranston, provides the only available parcel of land or existing structure on which Omnipoint can locate a wireless facility within the search ring and thereby remedy its coverage gap.

SIGNED UNDER THE PENALTY OF PERJURY THIS 28th DAY OF NOVEMBER, 2007.

Shayana Cordova

Shayana Cordova