# Exhibit G

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| OMNIPOINT HOLDINGS, INC.,<br><br>Plaintiff,<br>v.<br><br>THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CURTIS PONDER, FRANK CORSO III, and DONALD CURRAN in their capacities as members of the City of Cranston Zoning Board of Review<br><br>Defendants. | Civil Action No. 06-531ML |

**OMNIPOINT COMMUNICATIONS, INC.'S ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

The plaintiff, Omnipoint Communications, Inc.(hereinafter "Omnipoint" or "plaintiff") hereby answers the Defendants' interrogatories and states as follows:

**General Objections**

1. Plaintiff objects to these interrogatories to the extent they seek information within (a) the attorney-client privilege, (b) the work production protection, or (c) any other applicable privilege or protection.

2. Plaintiff objects to these interrogatories to the extent they seek sensitive commercial information without an acceptable confidentiality agreement or protective order.

3. Plaintiff objects to these interrogatories to the extent they are overly broad, unduly burdensome or are not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 1**

Please identify, with particularity, the coverage area for which the application which is the subject at issue in this suit seeks to cover.

**ANSWER NO. 1**

Objection. The interrogatory is vague, ambiguous and confusing. Without waiving this objection, Omnipoint states that, to the extent that the Interrogatory seeks information concerning the location of the coverage gap which Omnipoint sought to remedy by applying for the zoning relief at issue in this case, then Omnipoint responds that it has provided the Defendants, through its expert disclosure, maps depicting the section of Cranston in which it has a coverage gap, the exact location of the coverage gap, and the remedy for that coverage gap which its proposed facility would entail.

**INTERROGATORY NO. 2**

Please identify all existing sites where Plaintiff has facilities for the reception/broadcast of signals within a radius of twenty miles from the proposed site.

**ANSWER NO. 2**

Objection. The interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as plaintiff's sites beyond a two mile radius of the proposed site have no conceivable relevance to any of the issues in this action. Without waiving this objection, plaintiff has appended to these interrogatories a list of 16 facilities within four miles of the proposed site, identifying each such site by address and by distance from the proposed site.

**INTERROGATORY NO. 3**

Please provide a list of all telecommunication facilities for the reception/broadcast of signals regardless of ownership/carrier within a radius of twenty miles of the proposed site.

**ANSWER NO. 3**

Objection. This interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, plaintiff does not maintain information responsive to this interrogatory other than produced in response to Interrogatory #2, but instead, to the extent it is aware of such information, it is as a result of information from publicly available sources to which defendants have equal access as that of the plaintiff.

**INTERROGATORY NO. 4**

Please provide any analysis which was performed, at any time, which indicates coverage which would be provided by the establishment of additional or different telecommunication facilities) by Plaintiff at any site listed in response to Interrogatory No. 2 and/or 3 which coverage would, in whole or in part, overlap areas which Plaintiff contends would be covered by a telecommunications facility at the location applied for.

**ANSWER NO. 4**

Plaintiff's propagation studies and field testing, copies of which have been produced to defendants, indicated the existence of a coverage gap in the vicinity of the proposed site. None of its existing sites remedied the coverage gap in the vicinity of the proposed site. There are no existing sites owned or leased by another carrier within one and a half miles of the proposed site (the limit of plaintiff's radio frequency propagation at a signal strength of -84dMb) on which plaintiff could install a facility to remedy the gap at issue.

**INTERROGATORY NO. 5**

Please provide any analysis which was performed, at any time, which indicates coverage which would be provided by the establishment of telecommunication facilit(ies) by Plaintiff at any location which coverage would, in whole or in part, overlap areas which Plaintiff contends would be covered by a telecommunications facility at the location applied for.

**ANSWER NO. 5**

Please see Answer # 4, above.

**INTERROGATORY NO. 6**

Please state with particularity, each and every site considered and/or analyzed with respect to providing coverage in the areas where the proposed site is alleged and asserted to provide potential coverage.

**ANSWER NO. 6**

Objection. This interrogatory is overly broad, and to the extent it seeks information with respect to every site "considered" is vague. Without waiving this objection, plaintiff states that, in addition to the proposed site at issue in this case, plaintiff considered those of its current sites and the prospective sites identified in the plaintiff's expert disclosure, which was previously provided to defendants' counsel. With respect to the Cranston Country Club location and the Cranston Fire Department Museum location plaintiff provides herewith the computer generated propagation models it analyzed with respect to those locations.

**INTERROGATORY NO. 7**

Please describe in detail any and all communications, at any time, with the owners of any properties within a radius of twenty miles of the proposed site and which could potentially provide coverage of any or all of the area which Plaintiff contends would be covered by a telecommunications facility at the location applied for, stating, for each, the date of such communication, the parties to such communication, the nature and basis of such communication.

**ANSWER NO. 7**

Objection. The interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as plaintiff's sites beyond a two mile radius of the proposed site have no conceivable relevance to any of the issues in this action. Without waiving this objection, Plaintiff states that, besides the Solid Rock Baptist Church, which owns the property on which Plaintiff seeks to place the facility at issue in this case, it communicated with one other property owner within a radius of two miles of the proposed facility.

Plaintiff does not have records identifying the dates of its communications. However, in April, 2006, Michael Walsh, a site acquisition specialist at Omnipoint, approached Michael Lombardi, one of the owners of the Cranston Country Club, regarding the possibility of locating antennas on a power line pole that traversed the Country Club property in a north-south direction. Mr. Walsh met with Mr. Lombardi at the Country Club to discuss the possible placement of Omnipoint's facility. Mr. Walsh discussed what placement would entail and what possible lease terms might be. Mr. Lombardi expressed his concern that locating Omnipoint's antennas on the power line would necessitate Omnipoint's digging utility trenches across a golf course fairway, and, on that basis, he declined to go forward with Omnipoint. Omnipoint declined Mr. Lombardi's interest in placing a monopole near a pond toward the southern part of the golf course. Shortly thereafter, Mr. Walsh wrote Mr. Lombardi a letter confirming Lombardi's decision not to go forward. A copy of the letter is appended hereto.

Several months later, Mr. Walsh contacted Mr. Lombardi regarding the possibility of using a site near the golf course pond. Once again, Mr. Lombardi met with Mr. Walsh at the golf course and they walked to a site near the pond on the golf course to discuss where a monopole might be placed. They discussed lease terms of $2,000/month. Mr. Lombardi inquired about what the monopole would look like. Mr. Walsh had a photo simulation of the pole prepared, and later provided it to Mr. Lombardi. A copy of the photo-simulation is appended hereto.

In September, 2006, Ms. Cordova, Mr. Walsh's Team Leader, spoke on the phone with Mr. Lombardi, following up on Mr. Lombardi's discussions with Michael Walsh concerning placement of a monopole on the golf course. Mr. Lombardi indicated to Ms. Cordova that his sisters, who were co-owners of the property, were in disagreement with him regarding allocation of plaintiff's lease payments. Mr. Lombardi explained that he was the only one of the three siblings who was active at the golf course and believed that the lease payments

should go to the golf course but his sisters disagreed. He said his sisters would not agree to lease the property to plaintiff unless they agreed to payment allocated equally among the three siblings, an allocation to which he would not agree.

Mr. Lombardi arranged a phone call among Ms. Cordova, Mr. Walsh, his sister Diane Lombardi and himself. Plaintiff does not have a record of when the call took place but believes that it was in September, 2006. During the call, Ms. Lombardi expressed that she was speaking on behalf of herself and her sister, a co-owner of the Cranston Country Club property. She and Mr. Lombardi could not agree as to how the lease payments should be allocated, with Mr. Lombardi arguing in favor of applying the payments for the benefit of the golf club, and Ms. Lombardi arguing that the funds should be split among the three siblings. Ms. Cordova offered $25,000 to one or the other if they would accede to the other sibling's position. Mr. Lombardi and Ms. Lombardi would not agree to those terms. As a result, Ms. Cordova informed them that plaintiff would not move forward with plans to site a monopole at the Country Club property.

**INTERROGATORY NO. 8**

State with particularity the nature and substance of any communications with or related to the Cranston Country Club relative to the establishment or installation of a telecommunications facility by Plaintiff.

**ANSWER NO. 8**

See Answer No. 7, above.

**INTERROGATORY NO. 9**

Please state whether any alternative coverage analyses were performed, at any time, which included or covered the area within the alleged coverage area which would be provided by the establishment of the facility as proposed in the application at issue in this suit and, if so, please describe such coverage analysis.

**ANSWER NO. 9**

In response to this interrogatory, plaintiff provides its propagation models for the proposed site.

**INTERROGATORY NO. 10**

Please state whether any propagation maps, other than those provided to either the City of Cranston during the course of the application and hearing process related to the application at issue in this suit or as contained in Plaintiff's Expert Disclosure were created at any time which covered, in whole or in part, the area which Plaintiff contends would be covered by the proposed facility. If so, please describe such propagation maps with sufficient particularity that they may be requested in a Request for Production of Documents.

**ANSWER NO. 10**

Please see Answer No. 9, above. In addition, attached hereto are additional propagation maps showing the proposed site and alternative site at different heights above elevation.

**INTERROGATORY NO. 11**

Please describe in detail "Omnipoint's PCS Network" and those records which constitute "certain of Omnipoint's records with respect to this site" as those terms are used in paragraph two of Elijah Luutu's September 13, 2007 report for William A. Worth.

**ANSWER NO. 11**

Plaintiff has produced here with the records that were available for review by Mr. Luutu.

Omnipoint's PCS network is described in detail in the Complaint in this action.

**INTERROGATORY NO. 12**

Please describe any and all computer programs and field testing which were done with respect to either the proposed site and/or any coverage gap areas within the vicinity of the proposed site at any time with sufficient particularity that they may be requested in a Request for Production of Documents.

**ANSWER NO. 12**

Please see Answer No. 9, above. In addition to the propagation maps provided herewith, plaintiff conducted drive testing in the vicinity of the proposed site, the results of which were appended to the plaintiff's expert's report, which was previously provided to counsel for the defendants.

**INTERROGATORY NO. 13**

Please state with particularity each and every location which served as the basis for "computer-generated radio frequency propagation maps" which were created regarding any potential proposed site within a radius of twenty miles of the site proposed in the application at issue in this suit and which would provide coverage which overlaps, in whole or in part, the coverage which Plaintiff alleges would be achieved by the proposed site.

**ANSWER NO. 13**

Objection. The interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as plaintiff's sites beyond a two mile radius of the proposed site have no conceivable relevance to any of the issues in this

action. Without waiving this objection, plaintiff refers defendants to the documents produced in response to Interrogatory No. 9, above.

**INTERROGATORY NO. 14**

State with particularity whether any negotiations, offers, or other discussions took place with any property owner relative to any potential facility site within a radius of twenty miles of the site proposed in the application at issue in this suit within the preceding five year period, which discussions, etc., would potentially provide coverage within any area where Plaintiff asserts that a coverage gap exists which would be addressed, in whole or in part, by the erection of a telecommunication facility as prayed for in the application which is the subject of this suit.

**ANSWER NO. 14**

See Answer No. 7, above.

**INTERROGATORY NO. 15**

Please state the factual basis for the assertion in Mr. Luutu's report that the location of the facility at the fire department and museum in Cranston would "cause too much radio frequency interference to allow for a PCS installation" at that site and, with respect to such assertion, please describe any and all technology or mechanical means available or in existence which would or could address any such interference, regardless of cost.

**ANSWER NO. 15**

Objection. This question is directed to Mr. Luutu, a consultant designated as an expert by plaintiff, and not to plaintiff.

**INTERROGATORY NO. 16**

Please state the factual basis for the assertion contained in Mr. Luutu's report that a potential site at the Cranston Country Club "would not provide a suitable remedy for the coverage gap, because of its proximity to the facility being installed on the lattice tower northwest of the property." Please state, further, whether any propagation map or other analysis was created concerning potential coverage by a facility located at the Cranston Country Club of any or all of the area which Plaintiff contends a facility at the location sought in the application which is the subject in this lawsuit would provide.

**ANSWER NO. 16**

Objection. This question is directed to Mr. Luutu, a consultant designated as an expert by plaintiff, and not to plaintiff.

**INTERROGATORY NO. 17**

Please state, with particularity, all alternative sites to the site sought in the application which is the subject of this lawsuit which were considered, at any time, and, for each, please state each fact upon which Plaintiff contends that any such sites are not feasible alternatives to provide coverage within the area where Plaintiff contends that coverage would be provided by a facility located on the site which is sought in the application that is the subject of this lawsuit.

**ANSWER NO. 17**

These questions were addressed in plaintiff's expert report, a copy of which has been provided to counsel for the defendants. In addition, the golf course/country club site was rendered not feasible by the refusal of the property owners to agree on lease terms.

**INTERROGATORY NO. 18**

Please describe, with particularity, each of the facilities designated on the chart attached to the report of Mr. Luutu designated as "PR636, PR646, PR200, RI151 & RI149", including the owner/operator of such site and the existing carriers utilizing such sites.

**ANSWER NO. 18**

Plaintiff operates a wireless facility at each of the sites designated on the chart:

PR636 - 149 Laten Knight Road, Cranston, RI
PR200 - 618 Main Street, Coventry, RI
RI151 - 900 Phenix Avenue, Coventry, RI
RI149 - 244 W. Natick Street, Warwick, RI.

PR646 refers to the proposed site at issue in this matter.

**INTERROGATORY NO. 19**

Please describe any and all maps which exist with respect to Plaintiff's network for the State of Rhode Island with sufficient particularity to permit a Request for Production of Documents.

**ANSWER NO. 19**

Objection. The interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as plaintiff's sites beyond a two mile radius of the proposed site have no conceivable relevance to any of the issues in this action. Without waiving this objection, plaintiff has appended to these interrogatories a computer generated propagation map depicting plaintiff's existing coverage in the vicinity of Cranston, RI, within four miles of the proposed site.

**INTERROGATORY NO. 20**

Please describe with particularity any and all documents within Plaintiff's possession, custody or control, any and all maps or other documents depicting telecommunication facilities owned or controlled by carriers or entities other than Plaintiff, which facilities are appropriate or potentially appropriate for the installation of telecommunication equipment.

**ANSWER NO. 20**

Please see Answer No. 3.

**INTERROGATORY NO. 21**

Please describe with particularity any and all documents which depict or predict propagation signal strength and propagation with respect to signals at the frequency or otherwise consistent with that utilized by Plaintiff's network within the State of Rhode Island.

**ANSWER NO. 21**

Objection. This interrogatory is incomprehensible.

**INTERROGATORY NO. 22**

Set forth, in detail, any and all internal or other criteria which Plaintiff uses to determine suitable location of facilities, including any and all maximum distances, minimum or maximum signal strength (absolute or variations) or other criteria by which Plaintiff determines where telecommunication facilities are needed, appropriate or, in Plaintiff's view, feasible.

**ANSWER NO. 22**

Objection. This interrogatory is overly broad and unduly burdensome. Without waiving this objection, plaintiff states that it seeks to Plaintiff's site selection process is the end product of a multi-disciplinary effort which seeks sites that will allow plaintiff to provide coverage consistent with its obligations under its FCC license. It conducts radio frequency propagation modeling to identify gaps in its coverage and then sends site acquisition teams to study possible sites. Plaintiff studies traffic patterns and population density for prospective sites and reviews projected site performance within plaintiff's existing PCS network. Site availability takes into account the potential of any given site for construction of a facility, the existence of local zoning constraints and whether a proposed site can be leased. Plaintiff seeks to provide a signal strength of -84dBm, at which signal strength it is able to propagate its signal for a distance of one and a half miles.

**INTERROGATORY NO. 23**

Please state, with particularity, any and all potential sites, regardless of whether Plaintiff believes they are "feasible", which would provide coverage, individually or in combination, to a substantial portion of the area which Plaintiff asserts a facility located at the site which is the subject of the application which is at issue in this suit would provide.

**ANSWER NO. 23**

Plaintiff has provided herewith its computer propagation models for each such site.

**INTERROGATORY NO. 24**

Please describe any and all areas where so-called "coverage gaps" exist within the State of Rhode Island in services provided by Plaintiff or the carrier which Plaintiff's proposed facilty would serve and, if any maps concerning such coverage gaps are in the possession, custody or control of Plaintiff, please describe them with sufficient particularity that they may be requested in a Request for Production of Documents.

**ANSWER NO. 24**

Objection. The interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, as plaintiff's sites beyond a two mile radius of the proposed site have no conceivable relevance to any of the issues in this action. Without waiving this objection, plaintiff has appended to these interrogatories a computer generated propagation map depicting plaintiff's existing coverage in the vicinity of Cranston, RI, within four miles of the proposed site.

**INTERROGATORY NO. 25**

Please state whether any analyses were conducted of coverage which would be provided at the location which is the subject of the application that is at issue in this suit if a height lower than that proposed by Plaintiff were used.

**ANSWER NO. 25**

Plaintiff determined that the proposed height of its facility was necessary to meet its coverage objectives.

**INTERROGATORY NO. 26**

With respect to Plaintiff's expert in this matter, please state any any (sic) all sums paid related to the proposed site at issue in this suit, including the service for which such sums were paid, the billing rate and, in addition, please provide a list of all matters where such expert has provided services to Plaintiff and the total amount paid in each such manner.

**ANSWER NO. 26**

Plaintiff has, at all times identified by this Interrogatory, paid Mr. Luutu a monthly consulting fee, rather than by site.

I, Gerald Marquis, am an authorized representative for Omnipoint Communications, Inc., plaintiff in the above-entitled action, and I sign these Answers to Interrogatories for and on behalf of the plaintiff and am duly authorized to do so; the matters stated in the foregoing Answers are not all within my personal knowledge; such facts as are stated in the Answers which are not within my personal knowledge have been assembled by authorized employees or agents of the plaintiff and I am informed and I believe that the facts stated in the Answers are true and I so state under the penalties of perjury this 15 day of November, 2007.

Gerald Marquis
Authorized Representative for
Omnipoint Communications, Inc.

AS TO OBJECTIONS:

Paul Cantor w/ aw

Paul S. Cantor, Esq.
RI Attorney #3177
321 South Main Street, #302
Providence, RI 02903
Telephone: (401) 351-8200
Fax Number: (401) 351-9032

William A. Worth, Esq.
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Telephone: (617) 456-8005
Fax Number: (617) 456-8100

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first-class mail, postage prepaid, on 11/16

William A. Worth