# Exhibit I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OMNIPOINT HOLDINGS, INC.,

Plaintiff,

v.

THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CURTIS PONDER, FRANK CORSO III, and DONALD CURRAN in their capacities as members of the City of Cranston Zoning Board of Review

Defendants.

Civil Action No. 06-531ML

**PLAINTIFF'S EXPERT DISCLOSURE**

Now comes the plaintiff, Omnipoint Holdings, Inc., pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and files the following designation of expert witnesses the plaintiff may call to testify at the time of trial:

1. Elijah Luutu
2910 Kerry Forest Parkway $D4-354
Tallahassee, FL 32309

A copy of the report of Mr. Luutu setting forth his opinions, together with corresponding exhibits and Mr. Luutu's statement of qualifications are collectively attached as exhibits to the

disclosure provided to counsel. This disclosure, as filed with the Court, does not include the report or corresponding exhibits.

OMNIPOINT HOLDINGS, INC.

By its attorneys,

*/s/ Paul S. Cantor*
Paul S. Cantor, Esq.
RI Attorney #3177
321 South Main Street, #302
Providence, RI 02903
Telephone: (401) 351-8200
Fax Number: (401) 351-9032

*/s/ William A. Worth*
William A. Worth, Esq.
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Telephone: (617) 456-8005
Fax Number: (617) 456-8100

Date: September 14, 2007

**Certificate of Service**

**I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 14, 2007.**

***/s/ William A. Worth***

**Elijah Luutu**
**2910 Kerry Forest Parkway #D4-354**
**Tallahassee, FL 32309**
**Elijah.Luutu@wirekom.com**

September 13, 2007

William A. Worth
Prince, Lobel, Glovsky & Tye, LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114

Re: Omnipoint Holdings, Inc. v. The City of Cranston, et al.

Dear Mr. Worth:

I am currently a consultant to T-Mobile, USA, Inc., which is the parent corporation of Omnipoint Holdings, Inc. ("Omnipoint"). I am a radio frequency engineer, and, as such, am responsible for radio frequency engineering related to the design and implementation of Omnipoint's Personal Communications Systems ("PCS") network in Rhode Island. I have attached a copy of my qualifications to this report.

I have personal knowledge of the proposed wireless communications facility at 1753 Phenix Avenue in Cranston, Rhode Island, as I served as Omnipoint's radio frequency engineer with respect to that site. In preparing this report, I relied on my personal knowledge of the site and with Omnipoint's PCS network, as well as my review of certain of Omnipoint's records with respect to the site.

PCS digital technology converts voice or data signals into a stream of digits to allow a single radio channel to carry multiple simultaneous signal transmissions. Mobile devices using PCS technology transmit a radio signal to antennas mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic devices housed in a small equipment cabinet, or base station. The base station is connected by microwave, fiber optic cable, or ordinary telephone wire to the Base Station Controller, subsequently routing the calls throughout the world.

The operation of Omnipoint's PCS depends upon a network of wireless communications facilities. Because the PCS system has a lower signal and a much higher frequency than traditional cellular technology, the range between the PCS mobile telephone and the antennas is limited. In order to provide continuous

service to a PCS telephone user, without interruption or lack of access, coverage must overlap in a grid pattern resembling a honeycomb. In the event that Omnipoint is unable to construct a wireless communications facility within a specific geographic area, so that each site's coverage overlaps with an adjacent facility, Omnipoint will not be able to provide service consistent with its obligations under its FCC license to the consumers within that area.

To determine where telecommunications facilities need to be located for the provision of uninterrupted, seamless coverage in any area, Omnipoint's radio frequency engineers employ complex computer programs and conduct extensive field testing. Omnipoint reviews the location and design of its facilities in the area in order to assess a proposed site's potential interaction with its PCS network. In addition, Omnipoint observes local traffic patterns, local topography and nearby structures in order to assess potential sites for a wireless communications facility.

With respect to the area in the vicinity of the proposed site at 1753 Phenix Ave., Cranston, ("the Property") I conducted drive testing in the vicinity of the Property. Drive testing entails measuring radio signals in the vicinity of a possible site for a facility. I have appended a copy of drive test data for coverage in portions of Cranston, West Warwick, Coventry and Scituate, Rhode Island that are in the vicinity of the Property. In addition, I reviewed computer-generated radio frequency propagation maps with respect to the area bordered by Hope Road, Phenix Avenue and Burlingame Road in Cranston, which provide a prediction of coverage provided by a proposed site. I have appended a copy of the radio frequency propagation map which predicts the coverage which will be provided in the vicinity of the Property where antennas are placed at a height of approximately ninety feet above elevation.

Based upon my review of Omnipoint's existing coverage and its observation of traffic in the area, I determined that there is a significant gap in Omnipoint's radio frequency coverage in the vicinity of a highly traveled area of Cranston, bordered by Hope Road, Phenix Avenue and Burlingame Road. These roadways provide a direct travel path of travel from Cranston to West Warwick and Coventry. The gap extends to adjacent roads in the surrounding neighborhoods and affects users attempting to access Omnipoint's PCS network within the affected area, whether those users are in their vehicles or homes.

In order to rectify this significant gap in its coverage, I concluded that Omnipoint needed to locate a wireless facility in the immediate vicinity of the property. I then reviewed whether nearby towers might be utilized to address the coverage gap. I determined, through a review of Omnipoint's business records, that Omnipoint has antennas on the existing tower at 900 Phenix Avenue, east of the Property in the vicinity of I-295. It also has antennas on Cingular's tower northeast I-295 near

State Highway 51. In addition, Omnipoint is installing antennas on an existing lattice tower approximately one and one half miles northwest of the Property. Omnipoint's existing and soon-to-be installed antennas on these three existing towers do not fill its gap in coverage in the vicinity of the Property and therefore cannot be used as alternatives to the proposed facility at the Property.

I visited several potential sites other than the Property to determine whether a wireless telecommunications facility can be installed at a Property other than the site at 1753 Phenix Avenue. I visited the Fire Department Museum in Cranston, which is approximately seven tenths of a mile northwest of the property. I determined that radiophone at that site would cause too much radio frequency interference to allow for a PCS installation. I also visited the Cranston Country Club, approximately six tenths of a mile southwest of the Property, and determined that such a site on the Country Club golf course would not provide a suitable remedy for the coverage gap, because of its proximity to the facility being installed on the lattice tower northwest of the Property. In addition, I learned from Omnipoint's site acquisition personnel that the Country Club's ownership would not allow installation on its premises.

As a result of my review of drive testing data and radio frequency propagation maps, as well as my review of existing and potential alternative sites, I concluded that the only feasible alternative to rectify Omnipoint's network coverage gap in the vicinity of the Property, and to provide seamless coverage to the vehicles, residences and other buildings within that area, would be for Omnipoint to construct a facility at a minimum height of a ninety foot (90') at the Property and to install three panel antennas within a monopole structure at a height of eight seven feet center line of its antennas. The antennas would be connected by coaxial cables to a cabinet at the base of the monopole structure. No other existing or approved facility or location would remedy Omnipoint's coverage gap.

I have appended Omnipoint's drive test data and its predicted coverage for the area in the vicinity of the Property.

Very truly yours,

Elijah Luutu

Elijah Luutu

Enclosure