UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| OMNIPOINT HOLDINGS, INC.,<br><br>Plaintiff,<br>v.<br><br>THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CURTIS PONDER, FRANK CORSO III, and DONALD CURRAN in their capacities as members of the City of Cranston Zoning Board of Review<br><br>Defendants. | Civil Action No. 06-531ML |

**PRE-TRIAL MEMORANDUM OF PLAINTIFF, OMNIPOINT HOLDINGS, INC.**

**Plaintiff's Claim**

Plaintiff, Omnipoint Holdings, Inc. ("Omnipoint") claims that the City of Cranston Zoning Board of Review ("Zoning Board") wrongfully denied its application, submitted pursuant to the City of Cranston Zoning Ordinance ("Zoning Ordinance") for a dimensional variance and a special use permit to construct, install, operate and maintain a wireless telecommunications service facility on property located at 1753 Phenix Avenue, Cranston, Rhode Island ("the Property") in violation of the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7)(B)(i). Omnipoint will prove that the Zoning Board's denial of its application effectively prohibits Omnipoint from remedying a significant gap in its wireless coverage in Cranston, at a proposed site which constitutes the only feasible alternative for providing service to the area affected by the gap. In support of its claim, it expects to introduce testimony from fact witnesses Gerry Marquis, Shayana Cordova and Michael Walsh and from its expert witness, Elijah Luutu.

**Summary of Anticipated Evidence**

Gerry Marquis, Omnipoint's Regional Zoning Manager, will testify that Omnipoint is licensed by the Federal Communications Commission ("FCC") to provide Personal Communications Services ("PCS") in the State of Rhode Island, including the City of Cranston. He will testify that PCS digital technology, which converts voice or data signals into a stream of digits to allow a single radio channel to carry multiple simultaneous signal transmissions, allows Omnipoint to offer services unavailable in analog-based systems, including enhanced voice, high-speed data, paging and imaging capabilities, voice mail, call forwarding and call waiting.

Mr. Marquis will testify that, under the Zoning Ordinance, the use of the Property for a wireless telecommunications monopole and facility such as the one proposed by Omnipoint is permitted by special use permit from the Board. He will testify that Omnipoint proposed to construct a flagpole style monopole to minimize complaints about the aesthetic aspects of its facility. The proposed monopole meets the setback requirements mandated by the Ordinance on all sides of the Property but its southern property line. Accordingly, Omnipoint needed a dimensional variance from the setback requirements in order to install its facility.

He will testify that on or about September 21, 2005, Omnipoint, as co-applicant with the owner of the Property, applied for a dimensional variance from the Ordinance's setback requirements and a special use permit from the Board, and that the application was denied.

Shayana Cordova, a site acquisition specialist for Omnipoint, will testify concerning Omnipoint's efforts to locate alternative, feasible sites to remedy Omnipoint's gap in radio frequency coverage in the vicinity of the Property. She will testify that Omnipoint's radio frequency engineers identified a "search ring" in the general vicinity of Phenix Ave., Cranston, RI, as an area where Omnipoint has a gap in its wireless service coverage. She will testify that her team of site acquisition specialists sought potential sites within the search ring, including

existing cell towers on which Omnipoint might co-locate its antennas, existing buildings or other structures on which to mount its antennas, or raw land on which Omnipoint might construct a facility.

Ms. Cordova will testify that, based upon her review of existing cell towers, buildings and structures within or near the search ring, there is no existing structure of the height specified by Omnipoint's radio frequency engineers to operate within Omnipoint's PCS network and remedy the coverage gap at issue. Further, only two parcels of land within the search ring, the Cranston Country Club (the " Country Club") and the Solid Rock Baptist Church property, are of sufficient size on which to build a monopole structure. Ms. Cordova will testify concerning her unsuccessful efforts to lease property at the Country Club for placement of a monopole on the Country Club's golf course. She will testify that the proposed site at the Solid Rock Baptist Church at 1753 Phenix Ave., Cranston, RI provides the only available parcel of land or existing structure on which Omnipoint can locate a wireless facility of sufficient height to remedy its coverage gap

Michael Walsh, a site acquisition specialist and a member of Ms. Cordova's site acquisition team, will testify concerning his unsuccessful efforts to lease access to power line poles located on the golf course at the Country Club, where Omnipoint hoped to place antennas at sufficient height so that Omnipoint might be able to remedy its coverage gap. Mr. Walsh will testify about his successful efforts to enter a lease agreement with the Solid Rock Baptist Church at 1753 Phenix Ave. as a potential site for leasing raw land and the construction of a monopole.

Elijah Luutu, a radio frequency consultant for Omnipoint, will testify that, in his opinion, a coverage gap exists in the vicinity of the Property, and that the proposed monopole at the Property is the only feasible alternative for providing service to remedy the gap in Omnipoint's

coverage. He will base his opinion on his experience and education in the field of radio frequency engineering and upon the following facts, to which he will testify.

The operation of Omnipoint's PCS depends upon a network of wireless communications facilities. Because PCS uses a lower signal and a much higher frequency than traditional cellular technology, the range between the PCS mobile telephone and the antennas is limited. Given Omnipoint's FCC-designated frequency, its usual and optimum range for radio frequency propagation is one and a half miles, with yields lessened by building density, terrain and tree cover.

To provide effective, reliable and uninterrupted service to PCS users in their cars, homes and offices, without interruption or lack of access, coverage must overlap in a grid pattern resembling a honeycomb. In the event that Omnipoint is unable to construct a wireless communications facility within a specific geographic area, so that each site's coverage overlaps with an adjacent facility, Omnipoint will not be able to provide service consistent with its obligations under its FCC license to the consumers within that area. Those consumers will experience an abrupt and complete loss of signal.

To determine where telecommunications facilities need to be located for the provision of reliable coverage in any area, Mr. Luutu conducted drive testing and employed an industry-standard computer modeling software program to determine that Omnipoint had a significant gap in its coverage in the southwest section of Cranston. Mr. Luutu's drive testing and his review of computer generated radio frequency propagation maps indicated that Omnipoint lacked coverage in the area bordered by Hope Road, Phenix Avenue and Burlingame Road, and particularly with respect to coverage within vehicles traveling on these roadways, which provide a direct path of travel from Cranston to West Warwick and Coventry.

Mr. Luutu will testify as to the basis for Omnipoint's design standard of negative 84dBm for in-vehicle coverage. Further, he will testify that his drive testing and computer modeling indicated the extent to which the area in the vicinity of the Property failed to meet this standard, and why there is therefore insufficient signal strength within this coverage gap to provide reliable coverage in accordance with Omnipoint's standard. In addition, he will testify concerning his observations regarding the terrain and tree cover in the vicinity of the Property. He will testify that, based upon his field testing, his review of computer models, his observations of the subject area and his review of computer models for other sites in the subject area and the inability of Omnipoint to obtain a site at the Country Club, the only feasible alternative for remedying Omnipoint's coverage gap along the direct travel routes between Cranston and West Warwick and Coventry is to place antennas on a 90 foot monopole at the Property.

**Legal Basis for Omnipoint's Claim**

"Under the [Federal Telecommunications Act, the "TCA"], local governments retain control over decisions regarding the placement … of personal wireless facilities … subject to several substantive and procedural limitations [which provide] 'an outer limit' upon their ability to regulate personal wireless services". Southwestern Bell Mobile Systems v. Todd, 244 F. 3d 51, 57 (1st Cir. 2001) (citations omitted). Among other things, the TCA provides that local governments making zoning decisions that involve the placement of personal wireless telecommunications facilities shall not prohibit or have the effect of prohibiting personal wireless services." 47 U.S.C. §§ 332(c)(7)(B)(i).

To succeed on a claim for effective prohibition under the TCA, a wireless provider must establish that: a) the town's zoning policies and decisions have resulted in a "significant gap" in wireless services within the town; and b) "further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." AT&T Wireless PCS, LLC v. Town of Charlestown, et al.,

2005 U.S. Dist. LEXIS 12694 at * 43-44 (D.R.I. Mar. 2, 2005) (citations omitted). Review of a zoning board's decision under the anti-prohibition standard is de novo. District Courts need not accord any deference to the local board's decision. The Court can find an effective prohibition "even if substantial evidence exists to support the denial of an individual permit under the terms of the town's ordinances." National Tower, LLC, et al. v. Plainville Zoning Board of Appeals, et al., 297 F. 3d 14, 20-22 (1st Cir. 2002).

"A gap in wireless services exits when a remote user of those services is unable to either connect with the land-based national telephone network, or to maintain a connection capable of supporting a reasonably uninterrupted communication." Cellco Partnership v. Town of Grafton, 336 F.Supp.2d 71, 82-83. (D.Mass. 2004). "(T)he plain focus of the statute [TCA] is on whether it is possible for a user in a given remote location to reach a facility that can establish connections to the national telephone network. In our view, therefore, the most compelling reading of subsection B(i)(II) is that local governments may not regulate personal wireless services facilities in such a way as to prohibit remote users from reaching such facilities. In other words, local governments must allow service providers to fill gaps in the ability of wireless telephones to have access to land-lines." Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 642-643 (2nd Cir. 1999).

Evidence of coverage provided by other carriers has no bearing on whether Omnipoint has a significant gap in coverage. The First Circuit has rejected "[a] flat 'any service equals no effective prohibition' rule." Second Generation Properties, L.P. v. Town of Pelham, 313 F.3d 620, 633 (1st Cir. 2002).

In so doing the Court stated that:

> It is highly unlikely that Congress intended the many qualitatively different and complex problems to be lumped together and solved by a rule for all seasons that any coverage in a gap area

> automatically defeats an effective prohibition claim. Such a rule would be highly problematic because it does not further the interests of the individual consumer. To use an example from this case, it is of little comfort to the customer who uses AT&T Wireless (or Voicestream, Verizon, Sprint, or Nextel) who cannot get service along the significant geographic gap which may exist along Route 128 that a Cingular Wireless customer does get some service in that gap. Of course, that AT&T customer could switch to Cingular Wireless. But were the rule adopted, the same customer might well find that she has a significant gap in coverage a few towns over, where AT&T Wireless, her former provider, offers service but Cingular Wireless does not. The result would be a crazy patchwork quilt of intermittent coverage. That quilt might have the effect of driving the industry toward a single carrier. When Congress enacted legislation to promote the construction of a nationwide cellular network, such a consequence was not, we think, the intended result, see, e.g., S. Rep. No. 104-23, Purpose of the Bill (1995), reprinted in 1 Federal Telecommunications Law, supra, doc. 2, at 1 (bill aims to "open[] all telecommunications markets to competition"); H.R. Rep. No. 104-204, Purpose and Summary (1995), reprinted in 1 Federal Telecommunications Law, supra, doc. 3, at 47-50. ***The fact that some carrier provides some service to some consumers does not in itself mean that the town has not effectively prohibited services to other consumers.***

Second Generation at 633-634. (Footnotes omitted). (Emphasis added).

The wireless provider's other facilities in a given municipality similarly has no bearing on whether a coverage gap exists. In Cellco, the Court, in finding the existence of a coverage gap despite the fact that some coverage existed within the municipality, noted that "a coverage gap exists in Grafton Center, and…Cellco customers cannot reliably initiate or maintain calls when they are in that area. Although there are at least ten wireless telecommunications facilities sited within Grafton, all are located outside Grafton Center, and none enables Cellco to provide service to its customers in Grafton Center. Accordingly, I conclude that the coverage gap in Grafton Center qualifies as significant under the TCA". Cellco, at 82-83.

The need to consider mobile handsets rather than, or at least in addition to stationary handsets, is well established. The "existence of a coverage gap means that there is currently not enough signal strength to allow Cellco customers reliably to initiate or hold calls when located

within ***or traveling through*** these areas of Grafton." Cellco, at 73. The Court may consider, in determining whether a "significant gap" exists, whether the area sought to be covered is a "heavily traveled commuter thoroughfare". Omnipoint Communications MB Operations, LLC v. Town of Lincoln, 107 F. Supp. 2d 108, 199 (D. Mass. 2000), Cellular Telephone Co. v. Zoning Board of Adjustment of the Borough of Ho-Hokus, 197 F.3d 64 (3rd Cir. 1999); See also, National Tower, LLC v. Frey, 164 F.Supp.2d 185, 188 n. 1 (D.Mass 2001).

To establish that a permit denial is impermissible because there are no alternative sites, an applicant "must develop a record demonstrating that it has made a full effort to evaluate the other available alternatives and that the alternatives are not feasible to serve its customers." Southwestern Bell Mobile Systems, Inc. v. Todd, 244 F. 3d 51, 63 (1st Cir. 2001). A carrier's unsuccessful efforts to obtain a lease for otherwise suitable property is a factor for the Court to consider in determining whether such an effort has been made. Omnipoint Holdings, Inc., v. Town of Westford, 206 F.Supp.2d 166, 168. In Westford, the plaintiff wireless carrier submitted testimony concerning its efforts to lease an alternate property. *Id*. at 168, 172. In finding that such property was not available, the Court stated that "[a]t no point during the three hearings did the Town present any evidence that Omnipoint had been anything but diligent in attempting to secure a lease [for the alternate property]". The defendant Board, once confronted with the carrier's evidence that no alternative sites exists, must show either that the carrier's evidence is factually insufficient, or come forward with evidence of its own demonstrating a trial worthy dispute". Westford, at 172; National Tower, LLC v. Frey, 164 F.Supp.2d 185, 190 (D.Mass. 2001).

**Length of Trial**

This is a jury-waived matter. Omnipoint believes that the trial will entail approximately seven or eight hours of testimony from both parties' witnesses.

Respectfully submitted,

OMNIPOINT HOLDINGS, INC.

By its attorneys,

/s/ Paul Cantor
Paul Cantor, Esq.
RI Attorney #3177
321 South Main Street, #302
Providence, RI 02903
Telephone: (401) 351-8200
Fax Number: (401) 351-9032

/s/ William A. Worth
William A. Worth, Esq.
Kristin M. Knuuttila, Esq.
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Telephone: (617) 456-8000
Fax Number: (617) 456-8100

Date: April 18, 2008

**Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 18, 2008.

/s/ William A. Worth