UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| OMNIPOINT HOLDINGS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF CRANSTON, THE ZONING BOARD OF REVIEW OF THE CITY OF CRANSTON and JOY MONTANARO, EDWARD DIMUCCIO, CURTIS PONDER, FRANK CORSO III, and DONALD CURRAN in their capacities as members of the City of Cranston Zoning Board of Review,<br><br>Defendants. | ) | C.A. No. 06-531-ML-DLM |

DEFENDANTS' PRETRIAL MEMORANDUM

## A. INTRODUCTION

This suit is brought by Omnipoint Holdings, Inc. ("Omnipoint"[1]), a Delaware Corporation which sought a dimensional variance and special use permit before the City of Cranston Zoning Board of Review. Omnipoint sought to place a 90 foot tall monopole containing PCS antennas in an area less than the setback required by the applicable Cranston zoning ordinance.

The request was the subject of numerous hearings, where evidence and testimony were taken. The hearings were held before both the Cranston Planning Commission and the Cranston Zoning Board of Review.

On November 7, 2006, the Zoning Board issued its Decision denying the requested dimensional variance and special use permit. This suit was commenced on or about December 7,

[1] Omnipoint and T-Mobile are referred to throughout this Memorandum, essentially interchangeably. It is Defendants' understanding that the Plaintiff, Omnipoint Holdings, Inc. seeks to construct a facility for use by subscribers to T-Mobile.

2006, some 30 days after the Zoning Board of Review issued its decision.

Plaintiff has not challenged the actions of the Zoning Board or the ordinances which govern, asserting, instead, that the denial of the application to erect a facility at the Solid Rock Church constitutes an "effective prohibition" against its providing wireless telephone service, in violation of the federal Telecommunications Act.

B. FACTS EXPECTED TO BE PROVED IN DEFENSE.

While the City does not have any burden of proof in this matter, the City does expect to be able to establish the following facts through the testimony of its expert, David Maxson and through cross-examination of Plaintiff's witnesses:

1. Subject to further proof than has been provided to date, that Omnipoint is not licensed to provide telecommunications services in Cranston, R.I.

2. There is no legally recognized "coverage gap."

3. Any coverage gap as may exist is not legally "significant."

4. A signal strength less that -84dBm does not establish the existence of a coverage gap. That level of signal strength is a goal which Omnipoint sets, but is not a recognized or valid measurement by which a gap can be established and is inconsistent with Omnipoint's own filings with the government regarding what signal strength level establishes coverage by wireless service.

5. Omnipoint's "drive testing" data is not valid and probative of the existence of a gap in coverage. The drive testing was accomplished in an unreliable manner using methodology which is neither reliable nor consistent with accepted and acceptable practices.

6. Coverage is afforded in the area of the purported gap by other carriers and/or could be covered through roaming agreements.

7. Omnipoint has not established the level of coverage for stationary users and/or in-building users exists in the area of the alleged coverage gap.

8. The "dropped calls" claimed, even if accurate, do not establish the existence of a "coverage gap."

9. Any purported "coverage gap" is, in fact, a legally permissible "dead spot."

10. T-Mobile's published coverage maps establish the absence of a coverage gap in the area at issue.

11. The area of the purported coverage gap currently receives substantial coverage from a T-Mobile facility which is not reflected in T-Mobile's claim. Put another way, the purported coverage gap, as claimed in the Complaint in this matter is no longer accurate.

12. Omnipoint has not explored and does not know what roaming service is available in the area of purported coverage gap.

13. Similar signal strengths apply to T-Mobile service throughout the State of Rhode Island, as depicted in T-Mobile's coverage maps, which establish the absence of a "coverage gap" as suggested by Omnipoint.

14. There are other feasible alternatives to the Solid Rock location which address any coverage gap as may exist.

15. Omnipoint limited its search and approach to a single site solution to its purported coverage gap. This limitation resulted in a small search area for a single location to address the purported gap in coverage.

16. Omnipoint did not explore a multiple site solution. This failure defeats the contention, on which Omnipoint has the burden of proof, that the Solid Rock Church is the only feasible location to address any coverage gap as may exist.

17. Omnipoint has not identified the only feasible sites for coverage of the area at issue.

18. None of the other sites identified by Omnipoint as potential sites for addressing the area of the purported gap in coverage are infeasible:

    a. Omnipoint's expert now admits that the only thing which makes the Fire Department 'infeasible' is the fact that it would provide partially redundant service.

    b. The flagpole design on the Golf Course was abandoned without fully exploring what monetary figure might have resulted in agreement by the Golf Course owners.

    c. The placement of antennas on power lines at the Golf Course was not pursued in any manner which would establish that it was not feasible. It was simply dropped with virtually no effort made to negotiate an agreement with the Golf Course owners.

C. WITNESSES.

At this time, Defendants believe that they will call one witness, David Maxson, who is expected to testify as an expert. Mr. Maxson is expected to testify generally regarding all of the points set forth above.

D. SUPPORTING LAW.

Omnipoint's Motion is based solely on its contention that the denial of its application to build its monopole at the requested location violates the provisions of the provisions of 47 U.S.C. Sec. 332(c)(6)(B)(i)(II), which override local government actions that "prohibit or have the effect of prohibiting the provision of personal wireless services." Omnipoint does *not* assert that the decision of the Zoning Board of Appeals lacked a foundation of "substantial evidence."

Omnipoint offers a two-step argument: First, Omnipoint claims that there is, in the area where it seeks to construct its antenna, a "significant gap" in coverage. Second, Omnipoint asserts that the denial of a permit to construct a monopole antenna as prayed "effectively prohibits" the closing of this gap. In the process of urging this Court to conclude that such an effective denial has been established, Omnipoint asserts that this particular location, and this particular configuration, is the "only feasible alternative" for remedying this gap.

1. Existence of Substantial Coverage Gap.

Omnipoint claims that the denial of this particular application is an "effective prohibition" of service, in violation of the Telecommunications Act's admonition that the actions of local governments cannot "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. Sec. 332(c)(6)(B)(i)(II).

In order to prevail on an effective prohibition claim, Omnipoint has the burden of establishing both that Cranston's zoning decision and ordinances prevent the closing of a "significant gap" in coverage and that further reasonable efforts are "so likely to be fruitless that it

is a waste of time even to try." *Second Generation Properties, L.P. v. Town of Pelham*, 313 F.3d 620, 629 (1st Cir. 2002).[2] Omnipoint's burden, as a matter of law, "is a heavy one." *Cellco Partnership v. Town of Grafton,*[3] 336 F.Supp.2d, 71, 83 (D.Mass. 2004), *citing Town of Amherst v. Omnipoint Communications, Enterpr., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999).

Where, as in this case, an effective prohibition claim is based upon a particular decision (as opposed to a blanket prohibition contained in an ordinance or enacted criteria which, though facially objective, effectively preclude wireless service), the Plaintiff has the burden of establishing that the "existing application is the only feasible plan." *Cellco,* 336 F.Supp. at 83, *citing Second Generation*, 313 F.3d at 630.

a. Criteria for Establishing a "Gap".

"A gap in wireless services exists when a remote user of those services is unable to either connect with the land-based national telephone network, or to maintain a connection capable of supporting a reasonably uninterrupted communication.'" *Omnipoint Communications v. Town of Lincoln*, 107 F. Supp.2d 108, 118-19(D.Mass. 2000). A "significant gap" must be contrasted with "a mere, and statutorily permissible, dead spot. Federal regulations contemplate that areas

---

[2] By contrast, Defendants have no burden: "We doubt that Congress intended local zoning boards to pay for experts to prove that there are alternative sites for a proposed tower, simply to defend themselves from an easily made accusation in court that an individual denial of a permit amounts to an effective prohibition." *Nat'l Tower, LLC v. Plainville Zoning Bd.*, 297 F.3d 14, 24(1st Cir. 2002).

[3] *Cellco* is cited and quoted extensively in this Memorandum. While each of the principles enunciated in *Cellco* bear their own citations in support, because both the facts and procedural posture of *Cellco* lend themselves to citation under the circumstances existing in this case, Defendants have relied on this District Court decision to a large extent. In *Cellco*, a carrier's application to construct a wireless facility was denied by a local authority. Cellco claimed that the denial was an effective prohibition of its covering a significant coverage gap. On Cross-Motions for Summary Judgment, the *Cellco* Court denied Summary Judgment for the carrier and granted it in favor of the Town of Grafton.

enjoying adequate coverage will still include spots without reliable service." *Second Generation* at 631, *citations omitted*, *citing* 47 C.F.R. § 22.911(b) (2001); § 22.99 (defining dead spots as "small areas within a service area where the field strength is lower than the minimum level for reliable service").

There is no objective criteria which establish that a signal strength below a particular level establishes the existence of a coverage gap. In *Omnipoint Communications Enterprises, L.P. v. Zoning Hearing Bd. of Easttown Twnshp.*, 331 F.3d 386 (3rd Cir. 2003) the Court noted that Omnipoint's claim that a signal strength above -85 dBm is required to provide reliable service was rejected by a United States Magistrate Judge. The Magistrate Judge noted the absence of any standard establishing that signal level as a measure of a 'gap' in coverage. The Magistrate Judge specifically rejected detailed data (not offered in this case) concerning both dropped calls and 'no service' areas. In sum, "The Magistrate Judge therefore concluded that where the drive test data does not support the expert opinion that weak signal strength results in unreliable service, Omnipoint has not met its burden of establishing a significant gap in coverage." *Omnipoint v. Easttown*, 331 F.3d at 398-99.[4]

b. Coverage by Other Carriers Must be Considered.

A "significant gap" exists when a purported geographic gap, served by *no carrier*, is large enough in terms of physical size and number of users affected to amount to an effective prohibition. *Second Generation*, 313 F.3d at 631. "In ascertaining the existence and extent of

[4] To some extent, this discussion in *Easttown* was in the form of *dicta*, insofar as it was set forth as prelude to the Court's main concern, which was whether a gap is to be considered only based on the applicant's service, or the service of other providers in the area allegedly subject to a coverage gap. *Omnipoint v. Easttown*, 331 F.3d at 399. That issue is discussed *infra*. However, it does seem fair to suggest that the Third Circuit had no qualm with the Magistrate Judge's rejection of the -85 dBm standard (argued in that case) as the yardstick by which 'coverage gaps' are measured.

coverage for purposes of resolving an effective prohibition claim (and indeed the proposed solution), we hold it permissible to consider *(1) roaming service, (2) the coverage provided from towers in other towns, and (3) service by carriers not licensed in the jurisdiction at issue*." *Second Generation*, 313 F.3d at 632 (emphasis added).

2. Establishment that Other Sites are Not Feasible or, Conversely, that the Site at Issue is the Only Feasible Site.

"For a telecommunications provider to argue that a permit denial is impermissible because there are no alternative sites, it must develop a record demonstrating that it has made a *full* effort to evaluate the other available alternatives and that the alternatives are not feasible to serve its customers." *S.W. Bell Mobile Sys. v. Todd*, 244 F.3d 51, 59-60 (1st Cir. 2001)(emphasis added), *cited in National Tower*, 297 F.3d. at 24.

"The feasibility of alternatives is a fact-intensive determination, and the plaintiff bears a heavy burden to make the appropriate showing." *Cellco*, 336 F.Supp.2d at 83, *citing Amherst*, 173 F.3d at 14. The *Cellco* Court found that Cellco did not sustain its burden, because it did not show that a single facility on the proposed site was the only "technically feasible" option. *Cellco,*, 336 F.Supp.2d at 83, *citing Amherst*, 173 F.3d at 15.

a. A Carrier Cannot Establish Feasibility Based on its own Network Design Preference.

In order to override the lawful results of a local zoning board's denial of an application for a cell phone tower, a provider is not at liberty to restrict itself to its own preferred delivery model. Instead, it must prove, in effect, that it has considered alternative solutions to remedy coverage gaps (if, legally, they exist), 'outside the box' of its own self-defined model.

As noted in *Cellco:*

> The First Circuit's analysis in *Amherst* suggests that a Town might require a provider to rethink its network design." *See Amherst*, 173 F.3d at 14-15. In

> *Amherst*, the court pointed out that although a provider may desire the most efficient and cost-effective system, using "standard height towers at optimal locations," the provider must be willing to consider and present to localities other feasible alternatives available to them, even those that entail using lower towers and multiple site solutions.
>
> * * *
>
> Finally, Cellco does not appear to have adequately considered the possibility of *reconfiguring its network*, or using cell sites from outside Grafton Center to provide service within Grafton Center. *See Second Generation*, 313 F.3d at 635 (holding that the provider failed to show that other potential solutions, such as a taller tower or a site in another jurisdiction, could not cover the gap in services).

*Cellco*, 336 F.Supp.2d at 84(emphasis added). In addition, the *Cellco* Court specifically faulted Cellco's failure to consider the possibility that there may have been other single or multiple site solutions that would have provided adequate coverage in the claimed gap. *Id.* at 83.

b. <u>Increased Cost Does not Establish Infeasibility.</u>

The failure to consider and prove that there are no feasible alternatives, even if not as economically satisfying, precludes a Court's finding an effective prohibition. *See, Second Generation*, 313 F.3d at 635 (listing a range of possible solutions that the provider failed to demonstrate were not technically feasible, including: different tower height, sites outside the search area, other existing facilities, roaming coverage). In *Cellco*, the Court specifically rejected claims of a single-facility solution where the carrier did not consider the possibility of "*reconfiguring its network.*" *Cellco*, 336 F.Supp.2d at 84 (emphasis added).

Similarly, redundancy does not establish infeasibility. As noted in *Cellco*: "The options that remain ... may be more difficult and expensive than the proposed single site solution. But the TCA does not offer providers the best or cheapest option." *Cellco*, 336 F.Supp.2d at 85, *citing, generally, Amherst*, 173 F.3d at 15.

D. Probable Length of Trial.

The undersigned counsel believes that the trial in this matter is likely to last not more than two days.

Respectfully submitted,
Defendants,
By and through their counsel,

Dated: April 18, 2008

/s/ Jeffrey S. Michaelson

Jeffrey S. Michaelson, Esq. (#3299)
Michaelson & Michaelson
P.O. Box 622
North Kingstown, R.I. 02852
Telephone: (401) 295-4330
Facsimile: (401) 295-5220

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of filing of this document(s).

/s/ Jeffrey S. Michaelson